CITIZENS' BANK v. BANK OF GREENVILLE.

71   271
84    11

1. TRUST. *Bank. Insolvency. Charging assets. Collections.*

A cotton buyer bought and shipped cotton, and drew his draft on the consignee in favor of the Bank of Greenville, which took it and agreed to pay his checks given in purchase of the cotton. One such check the· Citizens' Bank acquired in due course, and for it accepted, in lieu of money from Bank of Greenville, its draft on its New York correspondent, which was returned unpaid, the Bank of Greenville having failed. *Held,* these facts do not create a trust in favor of the Citizens' Bank in respect to the assets of the Bank of Greenville in the hands of a receiver for the amount of the unpaid draft.

2. SAME. *Collecting bank. Charging as trustee.*

Nor can said Citizens' Bank charge the New York bank, as trustee, for the amount of the unpaid draft, because of the fact that it collected the bill of exchange drawn on the consignee of the cotton, and credited it to the overdrawn account of the Bank of Greenville after the latter had failed. and passed into the hands of a receiver.

3. SAME. *Insolvent bank. Collection. Subrogation.*

> The said Citizens' Bank having waived its right to demand from the Bank
> of Greenville payment of the check in money, and having taken the
> draft on New York instead, stands just as any other creditor of the in-
> solvent bank, and for this reason, and because the buyer and seller are
> without cause for complaint, there is no room for the doctrine of subro-
> gation.

FROM the chancery court of Washington county.

HON. W. R. TRIGG, Chancellor.

The Citizens' Bank of Greenville, Miss., exhibited its bill
against the Bank of Greenville and W. A. Pollock, its
receiver, seeking to impress a trust on the assets of the latter
bank for the amount of two bills of exchange. The facts
out of which it is claimed a trust arose in favor of plaintiff
are stated in the opinion.

An amended bill was subsequently filed by leave of court,
joining as defendants the Hanover National Bank of New
York and certain persons in this state alleged to be indebted
to it. By this amended bill complainant also seeks to charge
the Hanover National Bank, as trustee, for the amount of
the bills of exchange which were drawn against the con-
signee of the cotton, which were forwarded to it by the Bank
of Greenville and collected after it had failed and passed into
the hands of the receiver. The contention of the complain-
ant in this regard is that, having paid the checks given in pur-
chase of the cotton, it is entitled to be subrogated to whatever
rights the sellers of the cotton would have had against the
proceeds; that the bills of lading for the cotton were attached
to the draft drawn by the cotton buyer against the consignee,
and, on the collection of this draft by the Hanover National
Bank, it should have held the amount in trust, and should
now be chargeable in favor of complainant as trustee thereof.

The bill also prays a personal decree against Pollock, alleg-
ing that, as president of the Bank of Greenville, he knew
that the drafts given to plaintiff in payment of the checks
would not be paid, and that his conduct in inducing com-

plainant to accept said drafts in lieu of money was a fraud which should render him personally liable. G. D. Thomas, the successor of Pollock as receiver of the Bank of Greenville, was admitted to defend, and the Bank of Greenville, the receiver and Pollock demurred to the original and amended bills, and, the demurrers having been sustained and complainant having declined to amend, the bills were dismissed as to the demurrants. A *pro confesso* decree was rendered against the Hanover National Bank and others, defendants to the amended bill, but was subsequently set aside by the court, for the reason that the amended bill did not state a case for relief. The Citizens' Bank appeals.

*Nugent & McWillie*, for appellant.

The Hanover National Bank, with full knowledge of the manner in which the cotton business was being conducted, collected the bills of exchange drawn on the consignees, and applied the proceeds to the general credit of the Bank of Greenville. But it was cautious enough not to pay the bills of exchange given on it for the very purchase-money of the cotton. By reason of the frauds of the appellees, and the acts of the Hanover Bank, appellant lost recourse on the drawers of the checks, the cotton bills given to provide for them having been collected and the proceeds misapplied, and the Bank of Greenville having become insolvent.

Practically, the appellant was the seller of the cotton. It cashed the checks given to the sellers of the cotton, and took them just as they would have done. The cotton was never paid for by the broker, whose money for that purpose is now in the hands of the Hanover National Bank. The latter cannot claim to be *bona fide* purchasers of the cotton bills. The Greenville Bank and the Hanover Bank, the one expressly and the other by implication, undertook the duty of providing for the payment of the broker's checks given to pay for the cotton. The latter bank was acting as collector, and stands in no better attitude. It had no right to apply it

to the appellee's overdrawn account. See *Kennedy* v. *Windsor*, 52 Miss., 164; *Kinney* v. *Paine*, 68 *Ib.*, 258.

When one has received money which he cannot conscientiously withhold from another, he will be treated as a trustee *in invitum.* 2 Story's Eq. Jur., 1255; *Rank* v. *Rice*, 107 Mass., 37. The fact that a receiver has intervened makes no difference. He holds the bank's property subject to all the equities under which it held them. It is immaterial whether the identical moneys collected by the bank passed into the hands of the receiver or not. In some shape or other they went to swell the assets which fell into his hands. Complainant has the right to trace the trust-fund into the estate of the defaulting agent. 1 Jones on Liens, § 37.

The appellant should be subrogated to the equities of the cotton buyers. These deposited with the Bank of Greenville their bills of exchange, with bills of lading attached, in trust to be utilized to meet the checks given to the sellers of the cotton. The checks were taken up, and worthless bills of exchange on the Hanover National Bank given for them, and contemporaneously the cotton bills were transmitted for collection. Appellant paid the sellers of the cotton, and took the checks of the cotton buyers on the Bank of Greenville. Every possible requisite for the equitable subrogation is therefore present. 71 Am. Dec., 196; 1 Story's Eq. Jur., 646; *Osborn* v. *Noble*, 46 Miss., 449; *Harvey* v. *Warren*, 47 N. W. Rep., 747; *Shattuck* v. *Cox*, 27 N. E. Rep., 609; *Koehler* v. *Bank*, 5 N. Y., 745.

The doctrine of subrogation, being the creation of courts of equity, is so administered as to secure essential justice without regard to form, and is independent of any contractual relation. 2 S. E. Rep., 335; 7 At. Rep., 788; 7 Fed. Rep., 919; 93 Pa. St., 318; *Hines* v. *Potts*, 56 Miss., 346.

*Yerger & Percy*, for appellees, Bank of Greenville and G. D. Thomas, receiver.

The doctrine of subrogation is not involved. Its principle

is the substitution of another person in the place of a creditor in relation to the debt. *Staples* v. *Fox*, 45 Miss., 667. It implies a succession of rights. Hall and Pullen are not creditors of the Bank of Greenville. Complainant voluntarily paid the checks of Hall and Pullen given to the sellers of the cotton, and, even if Hall and Pullen had a claim against the Bank of Greenville, complainant would have no right to be subrogated thereto. They occupy no relation of suretyship to them, and there was no implied agreement that any security should be assigned or kept alive for the benefit of complainant. *Sanford* v. *McLean*, 3 Paige, 116.

Complainant surrendered the checks of Hall and Pullen without payment by the Bank of Greenville. It did so because it relied upon the New York drafts being paid. Complainant occupies no better position than other creditors of the insolvent bank. The sellers of the cotton have been paid. The buyers obtained credit for a draft given on the consignees, and their checks given to the sellers have been paid and surrendered, and the case is simply one where complainant, having acquired, in the usual course, checks on the Bank of Greenville, confided in it and became its creditor. Even if complainant could be treated as enforcing a lien for the purchase-money of the cotton, this could only be done while the cotton was in the hands of the first vendee. See 105 N. Y. Rep., 256; 103 U. S. Sup. Ct., 670. Complainant is entitled to no relief against any one, but must be content with its *pro rata* share of the assets of the Bank of Greenville.

*Phelps & Larkin*, for appellee, W. A. Pollock.

The only possible ground upon which the jurisdiction of equity can be sustained is that the bill seeks to impress a trust upon certain assets. Aside from that, the action against the bank and Pollock as an individual would have to be brought in the law court. There being no trust, the court rightfully dismissed the bill as to the bank, and, *a fortiori*,

rightfully dismissed it as to Pollock. If Pollock be liable at all, it is in tort, for fraud in issuing the bills of exchange. Equity has no jurisdiction in such a case, as the remedy at law is full, adequate and complete.    1 Pom. Eq. Jur., § 178.    When an action at law will furnish an adequate remedy, equity will not assume jurisdiction merely because an accounting is demanded or needed, or because the case involves fraud.    1 Pom. Eq. Jur., 178, n. 2; *Russell* v. *Clark*, 7 Cranch, 69.

WOODS, J., delivered the opinion of the court.

The bill and amended bill filed by the appellant in the chancery court of Washington county has a threefold aspect: (1) It seeks to impress a trust upon the assets of the bank of Greenville to the amount of $10,000, on the case thus made by it, praying, to that end, to be subrogated to the supposed rights of the two cotton buyers, Hall and Pullen; (2) it seeks to charge the Hanover National Bank, of New York, as trustee, for the amount of the two bills of exchange drawn by the Bank of Greenville in favor of the appellant; and (3) it prays a personal decree against the defendant, Pollock, late president of the Bank of Greenville.

The material averments of the pleadings on which the alleged right to relief is based, are substantially these, viz.: C. E. F. Hall, a local cotton buyer in Greenville, shipped to John Paton & Co., New York, 182 bales of cotton, for the price of $6,862.71, and he drew his draft on the consignees for that amount, attaching the bill of lading given by the carrier of the cotton to the draft.    This draft and bill of lading Hall then delivered to the Bank of Greenville, said bank obligating itself to pay Hall's checks drawn on itself in favor of the parties from whom the cotton was purchased.    In part payment of this cotton, Hall drew his check on the Bank of Greenville for $5,796.84, and this check the appellant accepted in due course of its banking business.    On presentation of this check, drawn by Hall in favor of the vendor of

the cotton (whose identity is not disclosed), to the Bank of Greenville, said bank did not have the ready money with which to meet the check, and, instead of paying the check in money, gave one of the bills of exchange of $5,000 now sought to be impressed with a trust character, gave its due-bill for $320, and paid the balance of $476.84 in cash, and the appellant surrendered up to the Bank of Greenville Hall's check for the $5,796.84. This is the statement of fact touching the first bill of exchange of $5,000.

The other bill of exchange, of equal amount, was acquired by appellant in the following manner: On the day after the transaction just detailed, appellant acquired another check, for $600, drawn by Hall on the Bank of Greenville, in payment of cotton purchased by him, and, to secure the said bank, Hall drew on the consignee for that amount, attached the bill of lading to the draft, and delivered the same to the Bank of Greenville, the said bank obligating itself to honor Hall's checks given to the vendor of the cotton. In exactly the same way the appellant, in the due course of its banking business, acquired possession of a check of R. F. Pullen for $2,000, drawn on the Bank of Greenville to pay for cotton purchased by Pullen, and Pullen secured said bank by delivering to it his draft on the consignee of the cotton for the amount of the purchase-price, attaching thereto the bill of lading. On the same day, appellant loaned the Bank of Greenville $2,000 in money. At the close of the day's business, and when the two banks made their usual settlement of the day's transactions, the appellant presented for payment to the Bank of Greenville the check of Hall for $600, the check of Pullen for $2,000, the due-bill of the cashier of the Bank of Greenville of the day preceding for $320.25, the due-bill of the cashier of the Bank of Greenville for the $2,000 loaned by appellant the same day, together with other demands amounting to $80, all aggregating the sum of $5,000; but again, instead of demanding and requiring payment in money, the appellant received the second bill of exchange

for $5,000, drawn by the Bank of Greenville on the Hanover National Bank, of New York.

This, in brief, is appellant's case, and it is lacking, in every aspect, of every element of trust. The sellers of the cotton to Hall and Pullen have been fully paid, and have no rights of any character. Hall and Pullen have been protected according to the obligation of the Bank of Greenville; their checks on that bank have been paid and surrendered and taken up by the bank on which they were drawn. These checks the appellant acquired in the course of its daily business as a bank, and, on presentation for payment, they were surrendered, and the bills of exchange taken instead of the cash. The appellant was entitled to demand and receive the face of the Hall and Pullen checks in money before parting with them; it did not elect to pursue its right to payment in currency, but consented to receive the bills of exchange drawn by its debtor on its New York correspondent instead. It occupies no better position than the other confiding creditors of the insolvent debtor bank.

As to the $2,000 loaned by the appellant to the Bank of Greenville, and the other small sums arising out of the dealings between the banks, as already hereinbefore set out, it cannot be seriously insisted that appellant has the semblance of right to impress a trust on any thing or anybody, natural or artifical.

The doctrine of subrogation has no room for consideration in this case. We have already seen that the sellers of the cotton, as well as the buyers, Hall and Pullen, are without complaint. The appellant was not required, in any kind of manner, to pay any debt for Hall, Pullen or any one else. It had its recourse on Hall and Pullen so long as it retained their checks; but these it voluntarily parted with, taking the bills of lading in extinguishment thereof.

The decree of the court below is in accordance with these views, and is

*Affirmed.*