'ALEXANDER COUNTY NAT. BANK *v.* CONNER.

[70 South. 827]

BANK IF BANKING. *Collection of drafts.    Trust.    Insolvency.*

Code 1906, section 4852, providing that a bank or other person collecting a draft with a bill of lading attached shall retain the money so collected for the space of ninety-six hours after the delivery of the bill of lading, is intended merely to give the debtor or consignor sufficient time to investigate his purchase and if dissatisfied, to sue by attachment in the local courts, and in such case a bank collecting for the owner's drafts with bill of lading attached does not hold the money collected in trust so that a trust may, on the insolvency of the collecting bank be impressed upon its assets, but the owner of the drafts is a mere general creditor.

APPEAL from the chancery court of Adams county.

HON. R. W. CUTRER, Chancellor.

Bill by the Alexander County National bank, against L. P. Conner, receiver of the first Natchez bank. From a decree sustaining a demurrer to the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*A. H. Geisenberger* and *S. Beekman Laub,* for appellant.

In the case of *Wm. Ryan & Sons* v. *R., Paine Receiver, et al.,* reported in 66 Miss. 678, our supreme court, speaking through Judge Campbell, under a state of facts, said:

R. A. Honea, of Aberdeen, Miss., was indebted to the firm of Ryan & Sons, of Dubuque, Iowa, who drew on him through the bank of Gattam & Co., at Aberdeen for collection, Honea, being a customer of the bank, although his account was overdrawn, gave his chcek on the bank as cash and took up the draft. The bank then sent its New York Check to Ryan & Sons, which was protested. Meantime Gattam & Co. had failed and Paine was appointed receiver of the assets. Honea paid no money to the bank, but he was solvent, and the check was charged to him by the bank. *Held,* that Ryan & Sons, in equity were entitled to impress a trust on so much of the assets of the bank in the hands of the receiver as consisted of the debt from Honea incurred by the check for the sum due Ryan & Sons.

In the case of *Kinney & Co.* v. *R. Paine, Receiver et al.,* a case very similar to the *Ryan case, supra,* and the instant case, the court again speaking through Judge Campbell (68 Miss. page 258), held to the rule as laid down in the Ryan case. *Lizzie A. Billingsley* v. *W. A. Pollock, Receiver,* 69 Miss. 759.

The appellant filed her bill in the chancery court, having jurisdiction over the receiver, and, after setting out the facts as above stated, prayed that the collection made

by the bank he declared a trust, and a lien impressed on the general assets of the bank therefor, and that the receiver be directed to pay the same in preference to the general debts of the bank.

The plea of the receiver set up the fact that the collection, when made by the bank, had been, in the manner stated, commingled with the general assets, and could not be separated or distinguished; and that the amount of money on hand at the time of the bank's suspension was less than four hundred dollars, (while the note, being in amount, the preference claimed, was for one thousand dollars), and assets of all kinds were far less than the liabilities, and, in view of these facts, the plea alleged that there was no lien in favor of petitioner, or right to demand payment, in full, of her debt.

The lower court held the plea sufficient, and, petitioner, declining to amend, the petition was dismissed, from which decree complainant appealed, and the decision of the lower court affirmed.

Appellants in the instant case readily admit the correctness of the rule (or rather the limitation of the rule) as laid down by the eminent Judge Campbell in the Billingsley case, however the facts of the case now before the court, and the cases of *Ryan & Sons* v. *Paine* and *Kinney & Co.* v. *Paine, et al.* (*supra*) are vastly different from the facts in the Billingsley case.

In the case of *Ryan* v. *Paine*, Honea paid the draft drawn upon him, by a check, and though having no funds in the bank, his check was treated as cash by Gattam & Co., as they knew that he was solvent and the amount of the overdraft could be made out of him. In the case of *Kinney* v. *Paine*, Carroll was also overdrawn, but was solvent, and the receiver expected to collect the money, to the amount of the overdraft through the suit which he (the receiver) had instituted against him (Carroll) when Kenney & Co. filed their bill.

In each of the two above cases the amount due from the respective debtors (Honea and Carroll) to the bank, con-

stituted a trust fund, and the preferences asked for, were granted.

In the Billingsley case, however, an entirely different state of facts existed. In that case a promissory note for the sum of one thousand dollars, was sent to the bank for collection; when the bank suspended business the total amount of cash, on hand, was only four hundred dollars, thus precluding the idea of a trust fund, or preference, since the amount, claimed as a preference, exceeded the total amount of the cash in the possession of the bank when it failed. And therefore there was nothing to which the trust for the amount of one thousand dollars could attach.

In the Ryan case and in the case of *Kinney* v. *Paine* the amount due the bank on the check of Honea in the one case, and Carroll in the other, was money which the receiver could, and did collect separately and distinctly from the money that was placed in the general funds of the bank. In the instant case the trust is made even more binding by section 4852, Code 1906, which is as follows: "A Bank or other person collecting a draft with bill of lading attached, shall retain the money so collected for the space of ninety-six hours after the delivery of the bill of lading. No other state in the Union has a statute similar to this one, and therefore no case can be found which will be directly in point with this one under review. This statute, so far as we have been able to ascertain, has never been construed by our supreme court. In reference to the draft paid by R. Veiner & Co. the petition alleges: " . . .That the said draft was duly presented to R. Veiner & Co. on the twenty-third day of October, A. D. 1913, and the same was presented to R. Veiner & Co. through the First Natchez Bank, and was paid to the said bank on the twenty-third day of October, 1913; that under the law the said First Natchez Bank held the money so paid to it, until the lapse of the ninety-six hours, when on the twenty-seventh day of October the said First Natchez Bank sent a draft to peti-

tioner, for the sum of five hundred and seventy-four dollars and twenty-five cents . . . this draft was duly and promptly presented for payment on the thirty-first day of October, 1913. (This date should have been the thirtieth day of October. See copy of protest of draft, Transcript page 4, top of page) and was protested for the reason given "Bank Closed."

In reference to the draft paid by Postelthwaite & Stewart, the petition alleges: " . . . That said money so paid by the Postelthwaite & Stewart Co. was required by the laws of the state of Mississippi, section 4852 to be paid for ninety-six hours before being sent to the consignor; that therefore when the said draft was paid by Postelthwaite & Stewart Co., the car of grain was delivered to them, and the money was held by the said First Natchez Bank, and was so held at the time the said bank went into the hands of receivers, on the thirtieth day of October, 1913."

These allegations being properly pleaded are admitted by the demurrer, so that the proposition to be decided on this appeal, is not whether the money was held by the First Natchez Bank, in the first instance, as a trust fund, but whether or not it was so commingled, with the other funds of the bank, that it lost its identity as a trust fund. In the case of the *Continental National Bank* v. *Weems,* 69 Tex. 489, 5 Am. St. Rep. 85, the agreement between the Continental National Bank and the City Bank of Houston takes the place of section 4852 in this case.

The Weems case is followed in *Hund* v. *Townsend,* 26 S. W. (Tex.), 310. In the case of *Sayles* v. *Cox,* 95 Tenn. 579, 32 L. R. A. 715, the court holds that a bank which makes "a collection before it makes an assignment, even though it be in fact insolvent, it simply becomes an ordinary contract debtor of the owner, and he cannot impress any trust character on the proceeds." But the court further says: "There may be special facts which will take the case out of the general rule, and here the

110 Miss.—42

court refers to the case of *Continental Bank* v. *Weems*, *supra*.

Section 4852, Code 1906, places the instant case on all-fours with the Weems case. By the agreement in the Weems case, the complaining bank says to the bank complained of: "You collect these notes, which I am sending you, and preserve the proceeds thereof, as my money, and return them (the proceeds) to me as such." Section 4852 said to the First Natchez Bank: "When you collect a draft with bill of lading attached thereto, you must retain the money so collected for the space of ninety-six hours after you deliver the bill of lading to the consignee." The agreement in the one case, and the statute in the other, establishes clearly the trust relation.

The purpose of this statute is to keep the money where it can be subject to the process of the local courts, so that if the commodity shipped, is found by the consignee, after inspection to be damaged or otherwise faulty, the bank could be garnished and the money recovered by the consignee.

The bank failed before the expiration of the ninety-six hours after the delivery of the bill of lading to and the payment of the draft by the Postelthwaite & Stewart Co. The four hundred and thirty-three dollars (being the amount of the collection on the draft), was in the vaults of the bank on the day of its failure; it had to be there, the law commanded the bank to keep it there for ninty-six hours, and the presumption is that the law was followed, and that part of the fifteen thousand dollars found in the vaults of the bank was the four hundred and thirty-three dollars.

Had Postelthwaite & Stewart Company found this grain to be faulty, and had garnished the bank, would this court allow the bank to say that the money was not there, when there was fifteen thousand dollars in the vaults of the bank, and the ninety-six hours had not yet expired. If the bank could not make such claim, then the receiver could not, for he takes the property subject

to all its trusts and incumbrances. This money went to swell the assets of the bank, and this satisfies the rule, as to the identification of trust funds. *People* v. *Bank of Danville,* 39 Hun. 187; *Weems case, supra; Western German Bank* v. *Norvell,* 134 Fed. 726.

The ninety-six hours had elapsed since the delivery of the bill of lading to R. Veiner & Company, and the failure of the First Natchez Bank, but we believe that the right to the preference asked under the facts of this portion of the instant case is equally as strong as the right shown in the former state of facts.

The statute made the bank a trustee, and its trust obligation could not be cancelled until it had paid to the appellant the amount collected by it from R. Veiner & Company, on the draft sent it (The First Natchez Bank) for collection. If this were not so, then the section 4852 would operate to render non-collectible, funds that would have otherwise been collected. That is to say, the statute would itself defeat the right of the remitting (Alexander county) bank to be paid in full. This we do not think was the intent and purpose of the law, nor should it be so construed. ·

*L. T. Kennedy,* for appellee.

In order that the appellants may have the assets of the First Natchez Bank impressed with a trust for the payment of the proceeds of the two drafts shown to have been collected, it is necessary that they should show that the identical money which was collected from the respective consignees came into the hands of the receiver and was held by him in specie or that the respective funds had been mingled with the funds of the bank which came into the hands of the receiver and constituted in part the gross sum held by him, or that their identical money had been invested by the Bank in tangible property which came into the hands of the receiver and is by him now held.

· If it can be shown that the identical money came into the hands of the receiver, we concede that the appellant should recover but we conceive the law to go further and hold that the appellant would not be required to identify the particular money if it could show that the particular money had been mingled with the funds of the bank that came into the hands of the receiver, as for instance, if the proceeds of the drafts had been kept separate from the other funds of the bank after collection and mingled with the other funds of the bank after its suspension so that there could have been no opportunity for any of the identical money to have been paid out or used by the bank in its usual course of business.

I conceived that the cases cited by appellant in his brief hold the above to be the law which, if correct, will absolutely settle the disposition of this question. The case of *Ryan* v. *Payne*, reported in 66 Miss. 678, was decided in accordance with the identical rule above announced.

A draft was drawn by Ryan & Sons on Honea through the Bank of Gattman & Co, Honea gave a check to Gattman & Co. to pay the draft, which check overdrew the account of Honea with the said bank. The bank was placed in the hands of a receiver before Honea made a deposit to cover his over-draft and to meet the check which he had given to the bank to cover the draft in favor of Ryan & Sons. Our supreme court held that Ryan & Sons were entitled to impress a trust on so much of the assets of the bank as consisted of the debt from Honea collected by said bank.

Measuring this decision by the rule above announced, we find that it is in absolute accordance therewith because the assets of the bank which passed into the hands of the receiver had amongst them the specific debt due by Honea to Ryan & Sons. If Honea's check had been duly paid so that the receiver of the bank would have had no action against Honea on account of this specific transaction and there had been no specific debt or tangible

property in the hands of the receiver to be identified as the proceeds of the Ryan draft, the decision certainly would have been otherwise.

If the receiver of the First Natchez Bank had any claim against R. Veiner & Co. or Postelthwaite-Stewart-Co. for checks given to pay either of the drafts in question, the appellant would have the right to pursue the debt and collect it from the consignee if they had not paid it or from the receiver of the First Natchez Bank if they had paid it to him.

The case of *Kinney* v. *Payne*, reported in 68 Miss. 258, announces the exact same rule, permitting the drawer of the draft to pursue the debt as against the drawee who, in fact, had not really paid the debt to the defunct bank, and held that the drawer of the draft was the real owner of the debt, and the fact that the drawee had given a check to the defunct bank to cover the draft did not change the ownership of the debt in as much as the debt had not really been paid but was yet due by the drawee.

Neither of the cases cited above are authorities which settle the principle of the case at bar but only aided us in determining the true character of what is meant by a trust fund or having the assets of a defunct bank impressed with a trust.

The case of *Billingsly* v. *Pollock*, reported in 69 Miss. 759, decided the exact proposition presented to the court in the case at bar. The only difference in the facts of the two cases being that it was a note sent for collection in the Billingsly case, while it is a draft in the present case, and there was not enough money in the hands of the receiver to pay the claim in the Billingsly claim while there is in the present case, neither of which facts, however are considered or commented upon in the opinion of the court and which we hold are immaterial facts as regards the determining of the present issue.

I conceive that counsel for the appellant will concede that the law governing the collection of a note and the collection of a draft under the circumstances recited, is

the same, and we submit to the court that the fact, whe-
ther or not there is sufficient funds in the vaults at the
time of the failure and passing into the hands of the re-
ceiver, to cover the item in question, is immaterial as de-
termining the right to have the same impressed with a
trust. The failure of a trust in part would not defeat the
trust *in toto*, and whatever fund may thus be held in trust
at the time of a bank's failure, less the entire amount
claimed, is impressed with a trust character. (5 Cyc, 567.)

Counsel for appellant, in his brief, page three, lays
particular stress upon the plea of the receiver in the
Billingsley case and the fact that the bank, at the time of
its suspension had less than four hundred dollars on
hand while it is very noticeable that Campbell, C. J., who
delivered the opinion of the court, did not mention either
of said facts as material to the issue but rendered his
decision upon an entirely different proposition and did
not announce any rule where either of said facts was in-
volved. The organ of the court referred to the cases
above discussed and reaffirmed the principle supporting
them, "that a party who had sent his claim to an insolvent
bank for collection, and which is collected by a check on
itself by the debtor who had no funds in the bank, could
follow and reclaim their own in the hands of the receiver,
but was unwilling to establish the proposition that a
customer of a bank, whose claim it had collected and
failed to pay over, had a preferred claim over all other
creditors of the bank."

The drawee of the drafts were discharged in the case
at bar like the maker of the note in the Billingsly case
for they paid them to the First Natchez Bank several
days before it suspended and while they were engaged in
the banking business as shown by the bill of complaint.

For the appellant to recover, it is necessary that the
amount so paid by the said R. Veiner & Co. and Postelth-
waite Stewart Co. can be traced as constituting a part
of the fifteen thousand dollars admitted to have passed
into the hands of the receiver, but this cannot be merely

presumed but it is necessary to allege and show that after the said payment, the said funds were kept segregated, or if placed in the general fund, that no checks were afterwards paid or any of the general business of the bank conducted, or use made of money on hand, or any of the same.

Section 4852 of the Code of 1906, is a law of the state of Mississippi under which the appellant sent the draft into this state for collection. He had notice of the statute before sending the draft and cannot complain of its effect. The purpose of this statute is well explained in the breif of appellant, and how a statute with a purpose so well explained and understood could have the effect as against the other creditors and depositors of a defunct bank as claimed in the brief for appellant, I am unable to understand.

If the consignee should have a right of action on account of damaged shipment his action is by attachment against the collecting bank, which bank is required to answer whether or not it is indebted and not whether it has the particular funds on hand paid to it by the consignee.

Section 4852 of our Code will not take the place of the agreement referred to in the Texas case by counsel of appellant because the statute and the agreement had an entirely different purpose. The agreement in the Texas case provided that the proceeds of such discounts should be preserved as the property of the complainant and returned to it as such, while section 4852 does not require that the proceeds of the draft be preserved and forwarded after ninety-six hours.

Counsel for appellant emphasizes the fact that section 4852 requires that the money so collected must be retained for the space of ninety-six hours but the section nowhere requires that the money so collected be forwarded to the drawer, but the allegations in this case show that a draft was sent in one case and not the money.

The case of the appellant must stand or fall upon the duties that the First Natchez Bank owed to appellant and not upon what duty the Frst Natchez Bank might owe, by statute to a person from whom it has collected a draft with bill of lading attached. The law requires the money so collected, to be retained but does not require the money so collected, in specie as appellant would have you believe, to be forwarded and such is not done in the usual course of business.

Appellant would seek a strict construction of the phrase "money so collected" and yet does not allege that the drafts were paid in money. We submit that the record does not show or the bill of complaint allege that the proceeds of the drafts in question ever came into the hands of the receiver or that he, as receiver, has any asset as the result or purchased with said proceeds which is the only and true test of the right to impress a trust in such cases as the one at bar.

SYKES, J., delivered the opinion of the court.

Appellant filed its bill in the chancery court of Adams county, praying that a lien be fixed upon funds in the hands of the receiver of the First Natchez Bank for the amounts herein below set out, and that said receiver be required to pay these amounts out of any funds in his hands as receiver. The facts alleged in the bill are, in substance, as follows: During the month of October, 1913, Antrim & Co. of Cairo, Ill., shipped a car of grain to the firm of R. Veiner, of Natchez, Miss. Draft for five hundred and seventy-four dollars and twenty-five cents against consignee in payment for same was attached to the bill of lading, and draft and bill of lading were sent by the appellant bank to the First Natchez Bank for collection. Said draft was paid to the First Natchez Bank when presented. On October 27, 1913, the First Natchez Bank sent a draft to appellant bank for the said sum, drawn upon the American National Bank of St. Louis,

Mo. This draft was duly presented for payment. by appellant, but was protested for nonpayment because the First Natchez Bank was placed in the hands of a receiver on October 29, 1913. Shortly after this shipment, and also in October of the same year, the same firm shipped to Postelthwaite & Stewart, of Natchez, Miss., a car of grain. A draft for four hundred and thirty-three dollars, the purchase price, with bill of lading attached, was drawn on consignees and placed in the hands of appellant bank for collection and sent by appellant to the First Natchez Bank. This draft was presented by the First Natchez Bank on the 27th or 28th of October and paid by the consignee. No draft for this amount was forwarded by the First Natchez Bank to the appellant bank. On October 29, 1913, said First Natchez Bank went into the hands of a receiver, having in its hands at that time fifteen thousand dollars, more or less, in cash. A demurrer was interposed to the bill of complaint and sustained, from which action of the chancellor this appeal is prosecuted.

It is the contention of the appellant that the amounts collected as above set forth were trust funds which increased the assets of the bank to that extent, and that a lien should be fixed on said assets in the hands of the receiver for said amount; that this is true both under the common law and under section 4852, Code 1906, which is as follows:

"A bank or other person collecting a draft with a bill of lading attached, shall retain the money so collected for the space of ninety-six hours after the delivery of the bill of lading."

The above section of the Code, however, in no way alters or changes the common-law rule. This section was enacted for the purpose of having the collecting bank remain the debtor of the consignor or its assignee for a sufficient length of time, during which the consignee could examine his purchase and bring suit, if necessary, at his domicile by attachment and garnishment of the funds in the hands of the collecting bank. But the relation of

debtor and creditor between a consignor or his assignee and the collecting bank exists under this statute just as under the common law. We adhere to the ruling announced by this court in the case of *Billingsley* v. *Pollock,* 69 Miss. 759, 13 So. 828, 30 Am. St. Rep. 585, wherein the court says:

"We are well pleased with these decisions, and reaffirm the obvious principle supporting them, but are unwilling to establish the proposition that a correspondent of a bank, whose claim it has collected and failed to pay over, has an equitable lien on all the assets of the bank, securing precedence over all other creditors of the bank."

The appellant in this case has no lien whatever on any moneys or assets in the hands of the receiver, but is simply a general creditor of the defunct bank and should be treated as such.

*Affirmed.*