LOVE, SUPERINTENDENT OF BANKS *et al. v.* FEDERAL LAND BANK OF NEW ORLEANS *et al.*

(Division B. April 14, 1930.)

[127 So. 720. No. 28508.]

Robert Burns, Jr., F. W. Bradshaw and **Flowers, Brown & Hester,** all of Jackson, for appellants.

J. Morgan Stevens and **Wells, Jones, Wells & Lipscomb,** all of Jackson, for appellees.

54

**Ethridge, P. J.,** delivered the opinion of the court.

The Federal Land Bank of New Orleans, Louisiana, operating under the laws of the United States, and the Hibernia Bank & Trust Company, a general banking corporation domiciled at New Orleans, Louisiana, exhibited their bill in chancery against J. S. Love, superintendent of banks of the state of Mississippi, and George Bean, liquidating agent of the Merchants' & Farmers' Bank of Okolona, Mississippi, alleging that on the 17th day of February, 1928, S. C. Jones, secretary and treasurer of the Okolona Farm Loan Association, executed his check on the Commercial Bank & Trust Company of Okolona, Mississippi, for fifty-two dollars in favor of

the Federal Land Bank of New Orleans and forwarded the said check in payment of an installment due by one Will Gates of Chickasaw county, Mississippi, to the Federal Land Bank. The bill alleged that Gates had prior to that time borrowed money from the Federal Land Bank secured by a deed of trust payable. on the installment plan. This check was received by the Federal Land Bank, and indorsed over to and deposited with the Hibernia Bank & Trust Company for collection on February 17, 1928. The Hibernia Bank & Trust Company in turn forwarded the check with other checks to the Merchants' & Farmers' Bank of Okolona, who proceeded to make all of the collections and, after deducting exchange charge, sent the Hibernia Bank & Trust Company its check, dated February 20, 1928, for eight hundred fifty-one dollars and eleven cents, drawn on the First National Bank of Memphis, Tennessee. In the interval of time between the forwarding of said check by the Merchants' & Farmers' Bank to the Hibernia Bank & Trust Company and its presentation at Memphis, Tennessee, the said Merchants' & Farmers' Bank failed and closed its doors on account of insolvency, and the First National Bank of Memphis refused to honor the check on that account. The bill also alleged that all of the affairs of the Merchants' and Farmers' Bank were taken in charge by J. S. Love, superintendent of banks, who was thereafter duly and legally appointed a receiver for said bank and is now administrator of the assets of the said bank; that the check forwarded to the Merchants' & Farmers' Bank was charged back by the Hibernia Bank & Trust Company to the Federal Land Bank of New Orleans.

It was further alleged that the Hibernia Bank & Trust Company was acting as a collecting bank, and the Merchants' & Farmers' Bank in turn received the check as collecting agent and presented such check to the Commercial Bank & Trust Company; that the Merchants' & Farmers' Bank received the check for fifty-two dollars for collection at a time when it was insolvent, and its

officers and directors knew that the bank was insolvent, but notwithstanding such insolvency and such collection they collected the fifty-two dollars from the Commercial Bank & Trust Company, and the said bank received full value for the said check; that the amount collected increased to that extent the assets of the Merchants' & Farmers' Bank; that at the time the Merchants' & Farmers' Bank failed and went into the hands of a receiver it had a cash balance largely in excess of fifty-two dollars; that neither the Federal Land Bank of New Orleans nor the Hibernia Bank & Trust Company had a deposit account with the Merchants' & Farmers' Bank at the time of said collection, and the check was not forwarded for deposit but for collection. It further alleged that in the course of administration of affairs J. S. Love, superintendent of banks, executed a certificate of guaranty to the Hibernia Bank & Trust Company, but that it refused to receive the certificate; and that afterwards the superintendent of banks issued a certificate of guaranty to the Hibernia Bank & Trust Company for fifty-two dollars, which it refused to accept, claiming that the fifty-two dollars so collected was a trust fund that they were entitled to have it treated as a trust fund superior to the claim of the creditors of the Merchants' & Farmers' Bank, being liquidated as aforesaid. Love and the liquidating agent of the bank refused to treat the fifty-two dollars as a trust fund, and this suit was filed praying for the establishment of the trust on the assets of the bank to the extent of fifty-two dollars as a preferred claim.

J. S. Love, superintendent of banks, and George Bean, liquidating agent, answered the bill and admitted that the check was executed on February 17, 1928, by S. C. Jones on the Commercial Bank & Trust Company of Okolona, Mississippi, for fifty-two dollars in favor of the Federal Land Bank of New Orleans; that such check was received by the Federal Land Bank and deposited with the Hibernia Bank & Trust Company on February

17; but denied that it was so deposited for collection only. They admitted that the Hibernia Bank & Trust Company forwarded the said check, together with the other checks, to the Merchants' & Farmers' Bank of Okolona, Mississippi, for collection; that the Merchants' & Farmers' Bank of Okolona received said check and made collection thereon and issued its exchange in settlement thereof in favor of the Hibernia Bank & Trust Company of New Orleans, said exchange being drawn on the First National Bank of Memphis, Tennessee, and being dated February 20, 1928, for an aggregate amount of eight hundred fifty-one dollars and eleven cents; that in the interval between the forwarding of said exchange to the Hibernia Bank & Trust Company and payment thereof by the First National Bank of Memphis, the Merchants' & Farmers' Bank failed and closed its doors, and the First National Bank of Memphis, Tennessee, refused to pay to the Hibernia Bank & Trust Company the proceeds of the said piece of exchange; and that J. S. Love, superintendent of banks, by virtue of the provisions of the banking laws of the state of Mississippi, took charge of the affairs of the Merchants' & Farmers' Bank. They denied that in handling and presenting the check for payment the Hibernia Bank & Trust Company was acting as a collecting bank for the Federal Land Bank, and denied that the Merchants' & Farmers' Bank in turn in receiving said check did so as a collecting agent for the Federal Bank, and denied that the Merchants' & Farmers' Bank was so acting when it presented the said check to the Commercial Bank & Trust Company for payment. They denied that the Merchants' & Farmers' Bank received the said item of fifty-two dollars for collection at a time when it was insolvent and that its officers and directors knew that it was insolvent.

They admitted that J. S. Love, superintendent of banks, issued his guaranty certificate to the Hibernia Bank & Trust Company for all of the checks forwarded by the Hibernia Bank & Trust Company, including the fifty-two

dollar item. They denied that the Merchants' & Farmers' Bank at the time it forwarded its remittance in the shape of exchange of the First National Bank of Memphis held the proceeds of the said fifty-two dollar check in trust for petitioners. They admitted that the proceeds of the check went to the cash balance on hand, but denied that this, or any other circumstances connected with the transaction, renders or gives to this item the character of a trust fund or preferred claim, and denied that in accepting said check and collecting same was a fraud on the part of petitioners and a breach of good faith in the customary rules of good banking.

The case was tried on the agreed statement of facts, which reads as follows:

"For the purpose of avoiding the expense of taking depositions and the production of witnesses at and for the trial of the above styled cause it is hereby agreed and stipulated by and between the petitioners, the Federal Land Bank of New Orleans and the Hibernia Bank & Trust Company of New Orleans on the one side, and J. S. Love, Superintendent of Banks, as Liquidator and George Bean, Liquidating Agent of the Merchants & Farmers Bank of Okolona as defendants to the petition of the said petitioners as follows, to-wit:

"On February 17, 1928, S. C. Jones, Secretary-Treasurer of the Okolona National Farm Loan Association of Okolona, Mississippi forwarded to the said Federal Land Bank of New Orleans his check on the Commercial Bank & Trust Company of Okolona, Mississippi for fifty-two dollars in favor of the said Federal Land Bank. This check was endorsed by the Federal Land Bank over to and deposited with the Hibernia Bank & Trust Company under and in pursuance of a general understanding by and between the said Federal Land Bank and the said Hibernia Bank & Trust Company by the terms of which the said Federal Land Bank deposited daily checks received by it on various and divers persons over a wide territory then being served by the said Federal Land

Bank of New Orleans and received credit for said checks on its daily balance but with the distinct understanding that any check not paid on due presentation thereof or that should not be ultimately paid in full should be charged back to the said Federal Land Bank and that the said Federal Land Bank endorsed and thereby personally guaranteed the payment of all checks deposited by it in the said Hibernia Bank & Trust Company; that the said check for fifty-two dollars was received and cashed by the Hibernia Bank & Trust Company under and in pursuance of said understanding; that the said Hibernia Bank & Trust Company forwarded said check with others to the Merchants & Farmers Bank of Okolona, Mississippi, for collection, and that the said Merchants & Farmers Bank received and collected said check and gave its exchange in settlement thereof in favor of the Hibernia Bank & Trust Company of New Orleans drawn on the First National Bank of Memphis, Tennessee, and dated February 20, 1928. After the said exchange had been forwarded and before it could be presented in the First National Bank of Memphis, Tennessee, in due course the Merchants & Farmers Bank being insolvent was taken in charge by the defendant J. S. Love as Superintendent of Banks for the State of Mississippi and said Bank was closed for business and on that account the First National Bank of Memphis, Tennessee refused to pay the Hibernia Bank & Trust Company said exchange. That because the said remittance draft received by the said Hibernia Bank & Trust Company was dishonored by the drawee bank at Memphis on account of the closing of the Merchants & Farmers Bank, the said Hibernia Bank & Trust Company on February 25, 1928, charged the amount of said fifty-two dollar check against the account of the Federal Land Bank. That the Merchants & Farmers Bank received and handled said fifty-two dollar check for collection at the request of the Hibernia Bank & Trust Company and at a time when the said Merchants & Farmers Bank was in fact insolvent.

The Merchants & Farmers Bank received the full amount of fifty-two dollars as the proceeds of said check and the said sum of fifty-two dollars was a part of the general balance of the said Merchants & Farmers Bank at the time it failed and closed its doors for business and was taken in charge by the Superintendent of Banks, and that at the time it failed it had a cash balance in excess of the said sum of fifty-two dollars, which amount was included in and increased the said cash balance to the full amount of fifty-two dollars.

"It is further stipulated that this cause may be submitted for final hearing at any time, either in term or in vacation of the court, upon the original petition of the Federal Land Bank and the Hibernia Bank & Trust Company, the answer of the defendants and this agreement with the introduction of any further additional testimony by either side; that the solicitors for the petitions will have thirty days from this date in which to prepare and file before the chancellor their brief on the legal questions involved, and that the defendants shall have fifteen days from the date of service of the copy of said brief in which to file a brief on behalf of defendant, and that the complainants shall then have five days in which to file a reply brief, and that when said briefs are filed the presiding chancellor will render his final decree disposing of the issues presented by the original petition herein."

The chancery court held that the transaction constituted a trust on the assets of the Merchants' & Farmers' Bank of Okolona, and directed its payment out of any assets in the said bank now in the hands of the banking department. From this decree this appeal is prosecuted.

There is a conflict in the decisions of the different states upon the question of whether such transactions constitute a trust, but our own court seems to be aligned with the authorities which hold that it does not constitute a trust, but that when the check is sent for collection and is actually collected the relation of debtor

and creditor is established and not that of principal and agent.

In the case of Alexander County National Bank v. Conner, 110 Miss. 653, 70 So. 827, it was held that section 4852, Code of 1906, providing that a bank or other person collecting a draft with a bill of lading attached shall retain the money so collected for the space of ninety-six hours after the delivery of the bill of lading, is intended merely to give the debtor or consignor sufficient time to investigate his purchase and, if dissatisfied, to sue by attachment in the local courts, and in such case a bank collecting for the owner's drafts with bill of lading attached does not hold the money collected in trust so that a trust may, on the insolvency of the collecting bank be impressed upon its assets, but the owner of the drafts is a mere general creditor. In the opinion of the court, at page 665 of the Mississippi Reports, 70 So. 827, it is said:

"It is the contention of the appellant that the amounts collected as above set forth were trust funds which increased the assets of the bank to that extent, and that a lien should be fixed on said assets in the hands of the receiver for said amount; that this is true both under the common law and under section 4852, Code of 1906, which is as follows:

" 'A bank or other person collecting a draft with a bill of lading attached, shall retain the money so collected for the space of ninety-six hours after the delivery of the bill of lading.'

"The above section of the Code, however, in no way alters or changes the common-law rule. This section was enacted for the purpose of having the collecting bank remain the debtor of the consignor or its assignee for a sufficient length of time, during which the consignee could examine his purchase and bring suit, if necessary, at his domicile by attachment and garnishment of the funds in the hands of the collecting bank. But the relation of debtor and creditor between a consignor or his assignee and the collecting bank exists under this statute just as

under the common law. We adhere to the ruling announced by this court in the case of Billingsley v. Pollock, 69 Miss. 759, 13 So. 828, 829, 30 Am. St. Rep. 585, wherein the court says:

" 'We are well pleased with these decisions, and reaffirm the obvious principle supporting them, but are unwilling to establish the proposition that a correspondent of a bank, whose claim it has collected and failed to pay over, has an equitable lien on all the assets of the bank, securing precedence over all other creditors of the bank.'

"The appellant in this case has no lien whatever on any moneys or assets in the hands of the receiver, but is simply a general creditor of the defunct bank and should be treated as such."

The decision quoted, Billingsley v. Pollock, supra, was a case where Billingsley, living in Arkansas, forwarded for collection to the Bank of Greenville, in this state, a note for one thousand dollars, the maker of which lived in or near Greenville. This note was duly presented to the maker, and paid by the check on said bank of one Evans, who had ample funds on deposit. The note was canceled and surrendered, the check of Evans charged to his account, and the bank remitted for the collection its check on its New York correspondent, but on the day of such remittance the bank suspended, and, on its own application, passed into the hands of a receiver, and its check was dishonored. The appellant filed this petition in the chancery court having jurisdiction over the receiver, and, after setting out the facts as above stated, prayed that the collection made by the bank be decreed a trust, and a lien impressed on the general assets of the bank therefor, and that the receiver be directed to pay the same in preference to the general debts of the bank. In the opinion the court discussed the cases of Ryan v. Paine, 66 Miss. 678, 6 So. 320, and Kinney v. Paine, 68 Miss. 258, 8 So. 747, and approved the principle announced in those cases, but declined to apply them to the case before them; the court saying:

"But [we] are unwilling to establish the proposition that a correspondent of a bank, whose claim it has collected, and failed to pay over, has an equitable lien on all the assets of the bank, securing precedence over all other creditors of the bank. Some of the courts so hold, but we will not follow their lead to this absurd result. It is enough to allow the correspondent who sends his claim to a bank 'for collection' to pursue and reclaim his own, without depriving others of their rights. There is no such magic in the word 'trust' as to convert all the assets of a bank into a fund to secure one who deals with it for convenience of collecting claims, in preference to others who trust it and deal with it. The maker of the note collected in this case was discharged, for she paid it. True, she did not have the money counted out to her on Evans' check, as we may assume would have been done, if required, but that was not necessary. Evans had money there, and his check was received as money, and his deposit was lessened by that much. The transaction was a legitimate one, in the usual course of business, and there is no just principle on which the appellant can be declared entitled to priority over other creditors of the insolvent bank. We should not be beguiled by the use of words, and call one claim a 'trust,' in order to secure it a preference over 'debts.' Wherever there is a trust, it may be enforced as such, but calling one sort of claim a trust merely to place it on a better footing is not allowable. It has been done in some instances, where hard cases have made bad precedents, which we will not follow."

In Hecker-Jones-Jewell Milling Company v. Cosmopolitan Trust Company et al., 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148, we find the following holdings:

"1. Where a bank makes a collection by merely charging the item against the account of its customer, it does not hold the proceeds in trust for the owner, although its directions were to collect and remit.

"2. The drawer of a draft sent through a bank for collection retains control of it, and may sue the collecting bank for negligence.

"3. A bank to which a draft is sent for collection has such title to it as is necessary to enable it to make collection.

"4. Payment by a bank to itself of a draft on its customer which has been forwarded to it for collection out of the customer's account, by his direction, operates as a payment of the draft as against the owner.

"5. Ordinarily, when a draft sent for collection is paid to the collecting bank, the relation between the owner and the bank ceases to be that of principal and agent, and becomes that of debtor and creditor.

"6. A deposit of checks to cover a check given in payment of a draft does not, in case they are taken subject to collection, amount to a specific deposit for the purpose of paying the draft so as to pass into the hands of a receiver of the bank, subject to a trust.

"7. A trust fund in possession of a bank at the time it becomes insolvent cannot be recovered from the bank commissioner after he takes possession of the assets of the bank, unless it is traced into a specific fund in his hands."

In a case note to this case in 24 A. L. R. at page 1152, the editor says: "The courts quite uniformly adhere to the theory that, before the collection is made, the relation existing between the owner of the paper and the collecting bank is that of principal and agent. 3 R. C. L., p. 634, section 262. When the collection has been made, the relation existing between the owner of the paper and the collecting bank depends upon the intention of the parties. 3 R. C. L., p. 632, section 261. According to the view now generally adopted,—though not without exception,—the relation of debtor and creditor arises after the collection has actually been made. This conclusion is based upon the custom of banks to credit those for whom collections have been made, and remit in the bank's

usual exchange.'' After setting out authorities support-
ing the contrary at page 1155, the editor says: '' The
majority rule, as above stated, that after the collection
is made the relation of debtor and creditor arises, hence
no trust exists, has been adhered to in a number of cases
in which the collection was made by receiving a check
on the insolvent bank, and charging the same to the ac-
count of the drawer, the court holding that the general
rule is not altered by reason of payment in this manner.''
Among authorities cited by the editor under this heading
is Billingsley v. Pollock, supra.

It is contended by the appellee, however, that regard-
less of the application of this rule the trust should be
impressed upon the funds involved in the instant case
because of insolvency of the Merchants' & Farmers' Bank
at the time when it made the collection. It appears from
the agreed statement of facts that the Federal Land Bank
deposited this check in the Hibernia Bank & Trust Com-
pany to its account there, and the check was actually
collected by the agent of the Merchants' & Farmers'
Bank, or by the bank to whom it sent the check for col-
lection. In other words, the check was paid, and, under
the arrangement between the Hibernia Bank & Trust
Company and the Federal Land Bank, it would seem that
only checks not paid were entitled to be charged back to
the account of the Federal Land Bank. It does not ap-
pear in the agreed statement of facts just when the Hi-
bernia Bank & Trust Company forwarded the check to
the First National Bank of Memphis. It accepted the
exchange drawn upon that bank and did forward it, but
just when does not appear, but it was not honored by the
Memphis bank when it reached there, as stated above in
the opinion. We think the contention of the appellee is
not sustainable in the courts of this state. We think this
is settled by the case of Citizens' Bank v. Bank of Green-
ville, 71 Miss. 271, 14 So. 456. In that case the court held:

'' [First] A cotton buyer bought and shipped cotton,
and drew his draft on the consignee in favor of the Bank

of Greenville, which took it and agreed to pay his checks given in purchase of the cotton. One such check the Citizens' Bank acquired in due course, and for it accepted, in lieu of money from Bank of Greenville, its draft on its New York correspondent, which was returned unpaid, the Bank of Greenville having failed. Held, these facts do not create a trust in favor of the Citizens' Bank in respect to the assets of the Bank of Greenville in the hands of a receiver for the amount of the unpaid draft.

"[Second] Nor can said Citizens' Bank charge the New York bank, as trustee, for the amount of the unpaid draft, because of the fact that it collected the bill of exchange drawn on the consignee of the cotton, and credited it to the overdrawn account of the Bank of Greenville after the latter had failed and passed into the hands of a receiver."

The court set out the transaction there involved in its opinion, from which it appears that C. E. F. Hall, a local cotton buyer in Greenville, shipped to John Paton & Co. in New York one hundred eighty-two bales of cotton, for the price of six thousand eight hundred sixty-two dollars and seventy-one cents, and he drew his draft on the consignees for that amount, attaching the bill of lading given by the carrier of the cotton to the draft. This draft and bill of lading Hall then delivered to the Bank of Greenville, said bank obligating itself to pay Hall's checks drawn on itself in favor of the parties from whom the cotton was purchased. In part payment of this cotton, Hall drew his check on the Bank of Greenville for five thousand seven hundred ninety-six dollars and eighty-four cents, and this check the appellant accepted in due course of its banking business. On presentation of this check, drawn by Hall in favor of the vendor of the cotton (whose identity is not disclosed), to the Bank of Greenville, said bank did not have the ready money with which to meet the check, and, instead of paying the check in money, gave one of the bills of exchange of five thousand dollars now sought to be impressed with

a trust character, gave its duebill for three hundred twenty dollars, and paid the balance of four hundred seventy-six dollars and eighty-four cents in cash, and the appellant surrendered up to the Bank of Greenville Hall's check for the five thousand seven hundred ninety-six dollars and ·eighty-four cents. This is the statement of fact touching the first bill of exchange of five thousand dollars. The other bill of exchange, of equal amount, was acquired by appellant in the following manner: On the day after the transaction just detailed, appellant acquired another check, for six hundred dollars, drawn by Hall on the Bank of Greenville, in payment of cotton purchased by him, and, to secure the said bank, Hall drew on the consignee, for that amount, attached the bill of lading to the draft, and delivered the same to the Bank of Greenville, the said bank obligating itself to honor Hall's checks given to the vendor of the cotton. In exactly the same way the appellant, in the due course of its banking business, acquired possession of a check of R. F. Pullen for two thousand dollars, drawn on the Bank of Greenville to pay for cotton purchased by Pullen, and Pullen secured said bank by delivering to it his draft on the consignee of the cotton for the amount of the purchase price, attaching thereto the bill of lading. On the same day, appellant loaned the Bank of Greenville two thousand dollars in money. At the close of the day's business, and when the two banks made their usual settlement of the day's transactions, the appellant presented for payment to the Bank of Greenville the check of Hall for six hundred dollars, the check of Pullen for two thousand dollars, the duebill of the cashier of the Bank of Greenville of the day preceding for three hundred· twenty dollars and twenty-five cents, the duebill of the cashier of the Bank of Greenville for the two thousand dollars loaned by appellant the same day, together with other demands amounting to eighty dollars, all aggregating the sum of five thousand dollars; but again, instead of demanding and requiring payment in

money, the appellant received the second bill of exchange for five thousand dollars, drawn by the Bank of Greenville on the Hanover National Bank, of New York. The court then said: "This, in brief, is appellant's case, and it is lacking, in every aspect, of every element of trust. The sellers of the cotton to Hall and Pullen have been fully paid, and have no rights of any character. Hall and Pullen have been protected according to the obligation of the Bank of Greenville; their checks on that bank have been paid and surrendered and taken up by the bank on which they were drawn. These checks the appellant acquired in the course of its daily business as a bank, and, on presentation for payment, they were surrendered, and the bills of exchange taken instead of the cash. The appellant was entitled to demand and receive the face of the Hall and Pullen checks in money before parting with them; it did not elect to pursue its right to payment in currency, but consented to receive the bills of exchange drawn by its debtor on its New York correspondent instead. It occupies no better position than the other confiding creditors of the insolvent debtor bank. As to the two thousand dollars loaned by the appellant to the Bank of Greenville, and the other small sums arising out of the dealings between the banks, as already hereinbefore set out, it cannot be seriously insisted that appellant has the semblance of right to impress a trust on anything or anybody, natural or artificial."

We are therefore of the opinion that when the Merchants' & Farmers' Bank collected the check the relation of debtor and creditor existed, and not the relation of principal and agent. It follows that the judgment of the court below must be reversed, and the bill will be dismissed.

Reversed and dismissed.