MANUFACTURERS' NATIONAL BANK *vs.* CONTINENTAL BANK.

Suffolk.   January 21, 1889. — February 28, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN; HOLMES, & KNOWLTON, JJ.

*Contract — Principal and Agent — Title to Collections — National Bank — Receiver.*

A national bank, which had agreed to "make collections" for another bank, crediting sight items at par subject to payment and remitting weekly in New York exchange, was *held* to be merely the agent of the latter to collect for it commercial paper, and to acquire no title to the proceeds of a check sent

to it for collection under the agreement, and by it forwarded to a sub-agent for that purpose, to which payment was made after it had suspended payment and ceased to do business and was in the hands of a receiver duly appointed.

CONTRACT to recover the amount of a check. Writ dated June 30, 1887. At the trial in the Superior Court, before *Barker*, J., the following facts were agreed, with liberty to draw inferences of fact therefrom.

The plaintiff and the defendant were each duly established national banking associations, the former located at Boston and the latter at St. Louis. On October 29, 1886, the Fidelity National Bank of Cincinnati, Ohio, wrote to the plaintiff, saying : " Enclosed herewith, we hand you a copy of our last statement, and beg to offer our services for making collections in the West; we will credit at par sight items on all points in Ohio, Indiana, and Kentucky where there are banks, subject to payment, and make collections on same points, remitting in New York exchange weekly if you desire, without charge; or will collect everything in the United States west of Pennsylvania and remit every ten days at par." On November 3, 1886, the plaintiff replied, saying: " We will send you our Ohio, Indiana, and Kentucky items upon the terms offered. . . . We can send you our St. Louis items, if you desire, upon the same terms, viz. weekly remittances at par." On November 5, 1886, the Fidelity Bank responded, saying: " Will take what you propose with pleasure, including the St. Louis items, making remittances to you weekly at par."

In pursuance of the arrangement set forth in these letters, the plaintiff from time to time after November 5, 1886, sent to the Fidelity Bank various drafts and checks, and that bank remitted to the plaintiff weekly, until about June 18, 1887. The plaintiff did no business with that bank other than sending to it checks and drafts in pursuance of that arrangement, but that bank never sent any checks, drafts, or other remittances to the plaintiff for collection, except in four instances, the last of which was on May 5, 1887, all of which were paid, and the plaintiff never made any collections for it except in those instances, as it had another bank in Boston as its correspondent through which it made collections in Boston and its vicinity. It was the custom of the Fidelity Bank to charge back to the

plaintiff, and to return to it by mail, checks and drafts sent to it by the plaintiff which were not paid, and there were several instances of that kind.

On June 18, 1887, the plaintiff then holding the check in question, which was drawn by J. G. Brandt for $1900.66, on the German American Bank of St. Louis, payable to the order of Hathaway, Soule, and Harrington and by them indorsed to the plaintiff, sent it, with other checks and drafts, by mail to the Fidelity Bank, indorsed by stamp as follows : " Pay Fidelity National Bank of Cincinnati, O., or order, for collection for Manufacturers' National Bank of Boston, Mass. F. E. Seaver, Cashier." This check, together with the other checks and drafts sent with it, each of which bore a similar indorsement, was accompanied by a slip or memorandum, which was headed " Checks forwarded to the Fidelity National Bank, Cincinnati, for credit to account of the Manufacturers' National Bank," and embraced ten items including the check in question, the sight items amounting to $3501.48, and one item of $165.55 being on one day's sight, with an order not to protest. The Fidelity Bank received these checks and drafts in due course of mail, on June 20, 1887, and on that day mailed to the plaintiff a postal card, signed by its cashier, stating in reply, " We credit subject to payment $3501.48." On the same day the Fidelity Bank passed to the credit of the plaintiff the amount, $3501.48, shown on the slip, and sent the check in question by mail to the defendant, having first charged it to the defendant and indorsed upon it by stamp the following words : " For collection for account of the Fidelity National Bank, June 20, 1887, Cincinnati, O. Ammi Baldwin, Cashier." The plaintiff did not know of this indorsement until after the appointment of the receiver for that bank. The defendant received the check in question on June 21, 1887, too late to send it through the clearing-house on that day, and sent it on June 22, 1887, through the clearing-house at St. Louis, to the German American Bank, the drawee, for payment, and the same was paid by that bank to the defendant on that day, and the defendant credited the amount on its books in its account with the Fidelity Bank.

The Fidelity Bank suspended payment, and did not open its doors for business on June 21, 1887, or at any time afterwards.

Its drafts, fraudulently drawn by its vice-president upon the Chemical National Bank of New York for a very large amount, went to protest in New York city on June 17, 1887, payment thereof having been stopped by the Fidelity Bank; but it continued to do business up to the close of banking hours on June 20, 1887. Its failure became known to the plaintiff on the morning of June 21, 1887, and to the defendant after the receipt of the check in question, but before it had collected it. On that day the plaintiff sent a telegram and wrote a letter to the Fidelity Bank, which were duly received, to deliver all checks, drafts, and notes to the Merchants' National Bank for its account, and on the same day the Merchants' Bank demanded of the Fidelity Bank all checks, drafts, and notes received by it from the plaintiff. The Fidelity Bank delivered nothing to the Merchants' Bank then, but some days afterwards delivered to it sundry checks and drafts which had been mailed in Boston by the plaintiff to the Fidelity Bank for collection on June 20, 1887.

On June 21, 1887, the plaintiff also telegraphed to the German American Bank to notify the bank presenting the check in question for payment to hold the funds for the plaintiff, and that bank, on June 22, 1887, showed the telegram to the defendant, and directed it to hold for the plaintiff the amount collected on the check. Such amount had then been credited, but without the knowledge of the plaintiff, to the Fidelity Bank on the books of the defendant.

On June 22, 1887, the plaintiff having heard from the German American Bank that it had paid the check, through the clearing-house, to the defendant, and had notified the defendant of the plaintiff's telegram, telegraphed the defendant to hold for account of the plaintiff the proceeds of the check. On the same day the plaintiff wrote to the defendant's cashier the following letter, which was received in due course of mail, saying : " We are advised by the German American Bank that at the time you collected of them the check of $1900.66, indorsed by us for collection to Fidelity National Bank, which check was collected by you this day, you were notified by them, at our request, to hold the proceeds for our account. We have also telegraphed to you to the same effect to-day. You will therefore hold the amount collected subject to our order, or remit the amount to us, less

exchange. We shall hold you accountable for any other disposition of the funds, the title to this paper being in us at the time of its collection." In reply to this, the defendant, on June 24, 1887, sent to the plaintiff the following letter, which the plaintiff received: "In reply to yours of 22d inst., we desire to say that the item referred to was placed to credit of the Fidelity National Bank in the usual way, and you are respectfully referred to the receiver of that bank."

The comptroller of the currency placed a national bank examiner in charge of the Fidelity Bank and its assets on June 21, 1887, who continued in charge thereof until a receiver was duly appointed, on June 27, 1887, to take charge of the assets and property of the Fidelity Bank as an insolvent bank. The amount collected on the check has never been paid to the plaintiff, and the defendant held the same, making no claim itself to the same, but contending that it belonged to the receiver as a part of the assets of the Fidelity Bank, and the receiver claimed the same of the defendant. On June 18, 1887, when the check in question and the other checks and the draft were sent by the plaintiff to said Fidelity Bank, and irrespective of them, the latter was, and has ever since continued to be, a debtor to the plaintiff to a large amount.

The judge, from the agreed facts, drew the inference of fact that at the time when the Fidelity Bank received and credited the check in question, and sent it to the defendant, it acted in good faith and did not then intend to fail; to which inference the plaintiff excepted, as not warranted by the agreed facts.

The judge refused to rule, as requested by the plaintiff, that the plaintiff was entitled to recover, and found for the defendant; and the plaintiff alleged exceptions.

*J. D. Ball*, for the plaintiff.

*J. R. Bullard*, for the defendant.

KNOWLTON, J. In the transaction upon which the plaintiff's claim is founded, the plaintiff and the Fidelity National Bank stood in the relation to each other of principal and agent. The business in which they were engaged was the collection of checks and drafts which belonged to the plaintiff or to the plaintiff's customers. Their contract contained in their letters shows, first, an offer to the plaintiff by the Fidelity National

Bank of its "services for making collections in the West," and then a proposition to credit sight items at par, subject to payment, and to make collections, remitting weekly in New York exchange, without charge.   This proposition was accepted by the plaintiff, and the Fidelity National Bank thereby became the plaintiff's agent to collect for it commercial paper.   Under this arrangement the credit given for a check was merely provisional until the check was paid.   It did not create a debt from the Fidelity National Bank to the plaintiff, and it did not change the ownership of the check.   *Levi* v. *National Bank of Missouri,* 5 .Dillon, 104.   *Balbach* v. *Frelinghuysen,* 15 Fed. Rep. 675. In that respect their relations to each other were very different from those between a banker and a depositor, where checks are received on deposit as cash, and an absolute right to draw against them is given.   *White* v. *National Bank,* 102 U. S. 658. *Scott* v. *Ocean Bank,* 23 N. Y. 289.   *Dickerson* v. *Wason,* 47 N. Y. 439.   *Metropolitan National Bank* v. *Loyd,* 90 N. Y. 530. *Ayres* v. *Farmers & Merchants Bank,* 79 Mo. 421.

Their dealings under the contract were in conformity to this construction of it.   It was a custom of the Fidelity National Bank to charge back to the plaintiff, and to return to it by mail, checks and drafts which were not paid.   The indorsement of the check which the defendant collected was "for collection for Manufacturers' National Bank of Boston, Mass." This indorsement would give notice of the plaintiff's title to all parties into whose hands the check might come.   *Sweeny* v. *Easter,* 1 Wall. 166, 173.   *Blaine* v. *Bourne,* 11 R. I. 119. *Cecil Bank* v. *Farmers' Bank,* 22 Md. 148.   *Merchants' National Bank* v. *Hanson,* 33 Minn. 40.

In one particular the contract in question differed from an ordinary contract for the collection of a principal's money by an agent.   Upon the collection of a draft or check, the Fidelity National Bank was not required to keep the proceeds by itself as the plaintiff's property, but might mingle it with its own money and make itself the plaintiff's debtor for the amount received.   As soon as the proceeds became a part of the funds of the Fidelity National Bank under this arrangement, the plaintiff's right to control it as specific property was gone, and the plaintiff had instead a right to recover a corresponding sum of

money. The Fidelity National Bank ceased to do business on June 20, 1887, and on the following day a national bank examiner was put in charge of its assets by the comptroller of the currency, and he continued in charge until a receiver was appointed under the laws of the United States. The check was not collected by the defendant until June 22, 1887. At that time the right of the Fidelity National Bank to mingle with its own funds the proceeds of a check collected for the plaintiff had terminated.

It was implied in the contract under which the collection was made, that the Fidelity National Bank should continue in business as a national banking association. When it ceased to do banking business, it lost the right to appropriate to itself the proceeds of the plaintiff's property, and to substitute for the money its own liability as for a debt. It had lost the power to perform its undertaking and to make weekly remittances of the amounts collected, for its doors had been closed, and it was in the custody of the law. Since it could not make the remittances, it could not lawfully under its contract collect the plaintiff's check and take the proceeds as its own. *Cragie* v. *Hadley*, 99 N. Y. 131, 133. If a payment to the defendant as its agent, and an entry of a credit by the defendant for the money, would have passed the property to the Fidelity National Bank, if it had then been regularly doing business, such a payment made after it was insolvent and in charge of the comptroller had no such effect. The implied condition in reference to which both parties contracted had ceased to exist. The continuance of the right of the bank to do business under the laws of the United States was of the very essence of the agreement which permitted it to receive the plaintiff's money as a credit to be accounted for. *Audenried* v. *Betteley*, 8 Allen, 302. Story on Agency, (9th ed.) § 486. This has been expressly decided in the case of *First National Bank* v. *First National Bank*, 76 Ind. 561, which is very similar to the case at bar.

We are of opinion that the check in the hands of the defendant was the plaintiff's property until it was paid, and that the proceeds of it did not pass to the Fidelity National Bank, and that the plaintiff is entitled to recover.

*Exceptions sustained.*