FREEMAN'S NATIONAL BANK *vs.* NATIONAL TUBE WORKS COMPANY.

Suffolk.　March 4, 1890. — May 9, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Bank — Draft — Restrictive Indorsement — Agent for Collection.*

A draft was indorsed for collection, without consideration, "to the order of" the A. Bank, which in turn indorsed it, "Pay B. Bank or order for account of A. Bank" and forwarded it to that bank "for collection and credit." The B. Bank acknowledged the receipt of the draft "to be used when paid," and sent it similarly indorsed to the C. Bank, which entered it on its books, not to the credit of the B. Bank, but for collection only. After it was accepted, the C. Bank cashed a check drawn on it by the B. Bank, which thereupon failed; and before the draft became due, payment was stopped thereon by the owner. *Held*, that the

indorsements were restrictive; and that the C. Bank could not, in reliance on the draft as security, make payments to the B. Bank and recover the amount thereof from the owner of the draft.

CONTRACT, upon two drafts, for $20,000 and $9,900 respectively, and for $7,000 with interest, as money paid to the defendant's use. The first draft, which differed from the second only in amount, was as follows:

" 20,000.                    McKeesport, Pa., May 17, 1884.

" At sight, for value received, pay to the order of A. Chaudon twenty thousand dollars, and charge this office as per margin.

"National Tube Works Co.,

by E. C. Converse, Asst. Mgr., for President.

"To Wm. S. Eaton, Treas., 8 Pemberton Square, Boston, Mass."

Across the face of each draft was the following: " May 19–84. Accepted, E. R. Hall, Asst. Treas."

The drafts bore the following indorsements successively:

" Pay to the order of C. R. Stuckslager, Cashier. A. Chaudon."

" Pay Penn Bank or order, for account of People's Bank, McKeesport, Pa. C. R. Stuckslager, Cashier. T. D. Gardner, As. Cash."

" Pay Freeman's National Bank, Boston, or order, for account of Penn Bank, Pittsburgh, Pa. G. L. Reiber, Cashier."

Trial in this court, without a jury, before *C. Allen*, J., who reported the case for the consideration of this court, in substance as follows.

The plaintiff offered to prove, among others, the following facts. Edward C. Converse, at the time of drawing the drafts in suit, was the assistant general manager of the defendant corporation at McKeesport, Penn., and A. Chaudon, the payee, was a clerk in its employ; and no consideration passed between them, or between them and the defendant, for the drafts, and they acted for and on behalf of the defendant in drawing and indorsing the drafts. The drafts were deposited in the People's Bank of McKeesport, of which C. R. Stuckslager was the cashier, where the defendant had an account on the day of their date, by its officers on its behalf. On the same day the drafts were sent by the People's Bank to its correspondent, the Penn Bank of Pittsburgh, indorsed as above, and enclosed in a

letter stating merely that "we enclose for collection and credit." The People's Bank did not advance or pay anything upon these drafts to the defendant, or give credit on account, and made no entry of them upon its books, its only record being a press copy of the above letter and a letter of the Penn Bank acknowledging their receipt, stating, "We enter for collection" the drafts, "to be used when paid." The drafts had not been charged by the People's Bank to the Penn Bank, nor had the former drawn on the latter against them. The Penn Bank entered these drafts, under date of May 17, to the credit of the People's Bank, and to the debit of the plaintiff bank, just as it entered all cash items in its account current with these banks, but it did not pay the People's Bank or the defendant any consideration therefor. Aside from these drafts, the Penn Bank was indebted to the People's Bank at the close of business on May 17. On that day the Penn Bank sent the drafts to its Boston correspondent, the plaintiff bank, indorsed as above, and enclosed in a letter which stated that the drafts were enclosed "for collection," and on the same day drew a check for $7,000 on the plaintiff bank to the order of the American Exchange Bank, its New York correspondent, crediting the amount thereof to the plaintiff. The drafts were received by the plaintiff bank on May 19, 1884, and were accepted by the defendant the same day. On May 20, a check of the Penn Bank for $7,000 reached the plaintiff bank through the Boston Clearing House, and was paid. At the close of business on May 19, according to the books of the plaintiff bank, there was a balance to the credit of the Penn Bank of $1,238.95. The balance at the close of business on May 20 to the debit of the Penn Bank was $6,063.76. The drafts, when received by the plaintiff bank, were entered upon its collection book, but have never been entered upon its account current, or upon any other book or account, to the credit of the Penn Bank. On May 21 or 22, the Penn Bank failed, and the defendant's treasurer was notified by the People's Bank and the manager of the National Tube Works at McKeesport not to pay the same. Payment was accordingly refused on presentation, on May 22. On July 1, the balance of account due to the plaintiff bank from the Penn Bank was $5,523.21.

The drafts in question were drawn for the purpose of pro-

curing funds from Boston for the purpose of paying various expenses of the defendant at its mills in McKeesport; and the amount of such drafts drawn by it every month generally exceeded $100,000, and were indorsed in precisely the same way, and passed through the same banks, as the drafts in question. The defendant's drafts, when received by the People's Bank, were not entered immediately to the credit of the defendant nor charged to the Penn Bank, but were so entered not less than ten days after their receipt, according to an understanding to that effect with the Penn Bank, which did not notify the People's Bank of the payment of any of such drafts. An examination of the books of the People's Bank for a period of six months next preceding the transaction in question showed that once only were the defendant's drafts charged up before the expiration of ten days. The Penn Bank was accustomed to enter all sight drafts of the defendant to the credit of the People's Bank on the day of their receipt, and charged them on the same day to the plaintiff bank, treating them in every respect, so far as the book entries were concerned, as cash items. The plaintiff bank entered the drafts to the credit of the Penn Bank when they were paid. The Penn Bank sent to the People's Bank, at the end of each month, a transcript of its account with the People's Bank for that month, showing the transactions of each day. The Penn Bank in like manner sent monthly statements to the plaintiff bank. The People's Bank sometimes overdrew its account with the Penn Bank, as such account appears upon its own books; but at all times when these balances against the People's Bank appeared, there had been sent to the Penn Bank, but not then charged to it, drafts of the defendant sufficient in amount to cover such balances. The Penn Bank sometimes overdrew its accounts with the plaintiff bank, if it is assumed that the defendant's drafts were not properly chargeable to the plaintiff bank until paid. The funds were remitted from Boston to McKeesport by the drawing of checks by the Penn Bank upon the plaintiff bank in favor of the American Exchange Bank, and by the People's Bank upon the Penn Bank. The checks did not correspond in amount with any particular collection made by the plaintiff bank, and were drawn from time to time, at the pleasure of

either bank. The People's Bank had but one indorsement stamp for the Penn Bank, and used it upon all paper indorsed to the Penn Bank, including cash items, and in like manner the Penn Bank had but one stamp for the plaintiff bank, such stamp being the one used upon the drafts in question. The form of indorsement adopted by any particular bank in this country is put upon all paper, whether such paper is entered upon the account current at the time of its indorsement and transmission, or at the time of payment, and without regard to there being other prior indorsements for " the account of " other banks upon the same paper.

If, upon the above facts, the action could be maintained, the case was to stand for trial; otherwise, judgment was to be entered for the defendant.

*W. G. Russell & J. Fox*, for the plaintiff.

*E. W. Hutchins & H. Wheeler*, for the defendant.

KNOWLTON, J. The indorsement from the defendant to the People's Bank, although in terms unrestricted, was without consideration, and merely for the purpose of collection. The People's Bank became the agent of the defendant, and the defendant, as owner of the drafts, can avail itself of all that its agent did for its protection.

The subsequent indorsements through which the drafts came to the plaintiff were both restrictive, giving notice that the ownership had not passed beyond the People's Bank. They purported to be made only for the purpose of collection on account of the owner, and they merely passed the legal title so far as to enable the indorsees to demand, receive, and sue for the money to be paid. *Lynn National Bank* v. *Smith*, 132 Mass. 227. It is well settled, that upon such an indorsement the owner may control his negotiable paper until it is paid, and may intercept the proceeds of it in the hands of an intermediate agent. *Manufacturers' National Bank* v. *Continental Bank*, 148 Mass. 553, and cases there cited. The indorsement of the Penn Bank, taken in connection with the former indorsement of the People's Bank, did not, by the words " for account of Penn Bank," imply that the Penn Bank was the owner. It was a request to pay " for account of " the Penn Bank as agent of the People's Bank. An unbroken succession of such indorsements

would indicate that each indorser was acting by direction of the next preceding indorser, who was himself an agent of the owner, who had before indorsed, and for whom the collection was to be made.

Nothing was shown in the course of business of either of the banks necessarily to conflict with the implication to be derived from the form of the indorsements. The letter of the People's Bank in which the drafts were sent to the Penn Bank was, simply, " We enclose for collection and credit" the drafts, describing them. The Penn Bank in its reply said,' " We enter for collection" the drafts described, " to be used when paid." As recited in the report, " The drafts, when received by the Freeman's Bank, were entered upon its collection book, but have never been entered upon its account current, or upon any other book or account, to the credit of the Penn Bank." It has so long been held by the courts that an indorsement of this kind is restrictive, protecting the rights of the owner, that officers of banks must be presumed to have well understood the law, and when they have honored overdrafts drawn by other banks which had sent other drafts for collection must have done it trusting in part to the financial soundness of their correspondent, and in part to the probability that the drafts would be paid, and not to a supposed legal right to control the drafts against the owner. *Rice* v. *Stearns,* 3 Mass. 225, 227. *Wilson* v. *Holmes,* 5 Mass. 543. *Treuttel* v. *Barandon,* 8 Taunt. 100. *Sigourney* v. *Lloyd,* 8 B. & C. 622. *Leary* v. *Blanchard,* 48 Maine, 269. *Sweeny* v. *Easter,* 1 Wall. 166. *Bank of Washington* v. *Triplett,* 1 Pet. 25. *Lawrence* v. *Stonington Bank,* 6 Conn. 521. *Bank of Metropolis* v. *New England Bank,* 1 How. 234, and 6 How. 212.

One who collects commercial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well known usages, so far as to permit the money collected to be mingled with funds of the collecting bank. *Dorchester & Milton Bank* v. *New England Bank,* 1 Cush. 177. When a payment is made to his agent and the money is put with the money of the collecting bank, he has a right to receive a corresponding sum, but he loses his right to the specific fund. In the absence of directions to the contrary, the collecting bank may pay it to the bank to which it should

regularly be remitted by setting it off against a debt due from that bank and giving credit for it in the account.

Very likely authority to collect would authorize the receipt of the money from the payor before maturity, if he saw fit then to pay, and remittances afterwards made, whether by a payment of money or by a set-off and adjustment of accounts in the usual way, would be good against the owner. In the present case no collection was made, for payment was stopped before the draft became due. The plaintiff had no right to advance the Penn Bank $7,000, or any other sum, on account of the defendant. Its only authority was to transmit, or pay by adjustment and set off, money which it received for the defendant.

We are of opinion that, upon the facts reported, the action cannot be maintained.      *Judgment for the defendant.*