HECKER-JONES-JEWELL MILLING COMPANY *vs.* COSMOPOLITAN TRUST COMPANY & another.

Suffolk. March 14, 1922. — June 29, 1922.

Present: RUGG, C.J., DE COURCY, CROSBY, & JENNEY, JJ.

*Trust Company*, In liquidation: preferred claim. *Trust*, What constitutes. *Banks and Banking. Bills and Notes.*

In a suit in equity against a trust company and the commissioner of banks in possession under G. L. c. 167, §§ 22–36, of its property and business to establish a claim as a preferred creditor in the liquidation, the following facts appeared: On September 10 the plaintiff drew its sight draft for $3,518 on a merchant in Chelsea payable to the order of a bank in Buffalo in the State of New York through the defendant trust company and three days later delivered it to the Buffalo bank with bill of lading attached covering the shipment of a carload of flour. The Buffalo bank immediately forwarded the draft with bill of lading attached to the defendant trust company with a collection form letter containing instructions to "Please remit for our credit" to a certain bank in the city

of New York and "All remittances should be made in New York Exchange." The Buffalo Bank had no account with the defendant trust company. On September 21 the defendant trust company sent a letter to the New York bank designated by the Buffalo bank stating that they were enclosing a check on a second New York bank for a sum covering the amount of the draft less exchange. There was no check enclosed. The defendant trust company had an account with the second New York bank but it was overdrawn. The Chelsea merchant, drawee in the sight draft, had an account in the commercial department of the defendant trust company, which on September 24 stood at $1,847.14, and on that day he deposited $134 in cash and $3,777.28 in checks and authorized the trust company to charge his account with the amount of the draft, which was done, and the draft and bill of lading were delivered to the merchant. The defendant trust company cleared through a national bank in Boston, where it maintained a "special account" of $300,000 and a general account for clearing purposes. On September 24, there was to the credit of the trust company in both accounts $351,643.93. On that day the trust company presented for clearance $350,023.42, and checks on it in the sum of $314,973.64 were cleared and its clearing bank paid it $135,000 in cash, leaving to its credit in the "special account" $251,693.71. The checks of the Chelsea merchant, the drawee in the sight draft, were among that day's clearances, although presented late and credited "subject to collection." One of them amounting to $1,000 afterwards was returned with the notation, "payment was stopped" and was charged back to the trust company and by it to the Chelsea merchant. On September 25 the commissioner of banks took possession of the property and business of the defendant trust company. *Held*, that

(1) When the amount of the sight draft was paid to the defendant trust company by the Chelsea merchant, the drawee, that operated as payment of the draft as against the plaintiff;

(2) The plaintiff, by making the sight draft collectible through the defendant trust company, authorized a collection by the method that was followed: the "proceeds" were merely a diminution of the debt or account owed by the trust company to the Chelsea merchant and a corresponding increase in the trust company's general substance, by means of book entries;

(3) There was no actual reduction to possession of anything that could be regarded as the subject matter of a trust;

(4) The parties, by the reasonable construction of their acts, must be held to have contemplated the relationship of debtor and creditor after the collection;

(5) The claim of the plaintiff was not entitled to be preferred.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 30, 1921, and afterwards amended, against Cosmopolitan Trust Company and the commissioner of banks in possession of its property and business, praying "that the trust company be adjudicated a trustee of the proceeds of the draft, described in the opinion, for Bank of Buffalo, its successors and assigns; that the property of the trust company in the possession of the commissioner of banks be subjected to an equitable charge in favor of the plaintiff in the sum of $3,518, with interest thereon from September 23, 1920;

that the commissioner of banks be directed to accept as a preferred claim the plaintiff's proof of claim; that the commissioner of banks be directed to set aside out of the property of the trust company in his possession funds sufficient for *pro rata* payment of this and other preferred claims in priority to claims not so preferred; that, if the court should have decided that the plaintiff had no standing as a preferred creditor, then in the alternative the commissioner of banks be directed to permit the plaintiff to make proof of its claim as a general creditor entitling the plaintiff to all benefits and dividends to which it would have been entitled had such proof been made within the time originally prescribed by him.

The suit was heard by *Braley*, J., upon the pleadings and an agreed statement of facts. Material facts are described in the opinion. By order of the judge, a final decree was entered dismissing the bill without costs. The plaintiff appealed.

*C. O. Pengra*, for the plaintiff.

*D. L. Smith*, for the defendants.

DE COURCY, J. This is a bill in equity to establish a preferred claim against the Cosmopolitan Trust Company, which is being liquidated by the commissioner of banks under St. 1910, c. 399 (now G. L. c. 167, §§ 22 to 36). The material facts agreed on are as follows: The plaintiff drew its sight draft, dated September 10, 1920, on B. Greenglass and Son of Chelsea in this Commonwealth, payable through the defendant trust company to the order of Bank of Buffalo in the sum of $3,518, and on September 13, 1920, delivered to said bank the draft with attached bill of lading covering the shipment of a carload of flour. The Buffalo bank immediately forwarded to the Cosmopolitan Trust Company the draft with attached bill of lading, accompanied by its collection form letter, which contained instructions to "Please remit for our credit to Chemical National Bank, New York" and "All remittances should be made in New York Exchange."

The Bank of Buffalo had no account with the defendant trust company. Under date of September 21, 1920, the trust company sent a letter to the Chemical National Bank stating that there was enclosed a check on the Irving National Bank for $3,514.48, covering the proceeds of the draft less $3.52 exchange; no check, however, was enclosed. A duplicate of this memorandum was sent to the Bank of Buffalo. The Cosmopolitan Trust Com-

pany had an account with the Irving National Bank, but the account at that time was overdrawn.

B. Greenglass and Son, the drawees, had an account with the commercial department of the defendant trust company, the balance of which at the opening of business on September 24, 1920, was $1,847.14. On that day they made a deposit of $134 in cash and $3,777.28 in checks. After making this deposit they authorized the trust company, by their check or otherwise, to charge their account with $3,518, being the amount of the draft; this was accordingly done, and the draft and bill of lading were delivered to B. Greenglass and Son.

The Cosmopolitan Trust Company cleared all its checks through the National Union Bank of Boston. There it maintained a "special account," which by agreement was required to show a balance of at least $300,000, and a general account for clearing purposes. At the opening of business on September 24, 1920, the balance to the credit of the trust company in both accounts was $351,643.93. During that day the bank received from the trust company checks to the amount of $350,023.42; cleared checks drawn on the trust company to the amount of $314,973.64; and delivered to it cash to the amount of $135,000. At the close of business on that day the balance to the credit of the trust company was $251,693.71. The checks deposited by B. Greenglass and Son, to the amount of $3,777.28, were included in said $350,023.42. They were received by the National Union Bank of Boston after business hours on September 24, were entered on its books on September 25, and were credited to the trust company "subject to collection." One of the checks, for $1,000, was later returned uncollected, with the notation, "payment was stopped," and was charged back to the trust company, and·by it in turn to B. Greenglass and Son. At the opening of business on September 25, 1920, the defendant commissioner of banks took possession of the Cosmopolitan Trust Company, and still retains such possession.

It is not disputed that the Cosmopolitan Trust Company was the agent of the owner of the draft in question for the purpose of collecting it. The plaintiff as principal retained control of it, and could sue the collecting bank for negligence. *Lord* v. *Hingham National Bank*, 186 Mass. 161. On the other hand the trust company, as collecting bank, had such rights in and title to the draft as was

necessary to enable it to make the collection. *Haskell* v. *Avery,* 181 Mass. 106. When the draft was paid to the defendant trust company from the deposit of the drawees, B. Greenglass and Son, by their direction, that operated as payment of the draft as against the owner. *Nineteenth Ward Bank* v. *First National Bank of South Weymouth,* 184 Mass. 49. Ordinarily when a draft has been paid to the collecting bank, the owner's right of control ends, and the relation between the collecting bank and the owner of the draft ceases to be that of agent to principal, and becomes that of debtor to creditor. As was said by this court in *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553, 558: "Upon the collection of a draft or check, the Fidelity National Bank was not required to keep the proceeds by itself as the plaintiff's property, but might mingle it with its own money and make itself the plaintiff's debtor for the amount received. As soon as the proceeds became a part of the funds of the Fidelity National Bank under this arrangement, the plaintiff's right to control it as specific property was gone, and the plaintiff had instead a right to recover a corresponding sum of money." And, in the language of Knowlton, J., in *Freeman's National Bank* v. *National Tube Works Co.* 151 Mass. 413, 418, "One who collects commercial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well known usages, so far as to permit the money collected to be mingled with funds of the collecting bank." See also *Planters' Bank* v. *Union Bank,* 16 Wall. 483, 501; and cases collected in Scott's Cases on Trusts, 67 n.

The contention of the plaintiff is, that the proceeds of the draft after collection were held by the Cosmopolitan Trust Company in trust for the Bank of Buffalo, by reason of the instruction to collect and remit for the credit of the Buffalo Bank to the Chemical National Bank, New York. And it cites authorities in support of its claim that instructions, by restrictive indorsement or otherwise, to "collect and remit" import an agreement to hold the specific proceeds in trust. It is to be noted, however, that in *First National Bank of Raton* v. *Dennis,* 20 N. M. 96, *First National Bank of Central City* v. *Hummel,* 14 Col. 259, and *Griffin* v. *Chase,* 36 Neb. 328, relied on by the plaintiff, the collecting bank was in fact paid in cash or by a check on another bank, proceeds which

could be held in trust and forwarded in specie. In *People* v. *Bank of Dansville,* 39 Hun, 187, *Boone County National Bank* v. *Latimer,* 67 Fed. Rep. 27, *Holder* v. *Western German Bank,* 136 Fed. Rep. 90, where the proceeds of the collection were considered as held in trust, it does not appear in what currency medium, as a trust *res,* the collection was actually made. In *American Can Co.* v. *Williams,* 176 Fed. Rep. 816, the existence of a trust relation was not disputed, and the question involved was one of tracing the fund. In *Wallace* v. *Stone,* 107 Mich. 190, a majority of the court construed the evidence as proving that the payment was made by the debtor in money, after cashing a certificate of deposit. And in *Darragh Co.* v. *Goodman,* 124 Ark. 532, it was held that the bank was authorized to receive payment only in money, and that a payment by check on the collecting bank was to be regarded as a payment in money.

On the other hand, the courts in many jurisdictions, emphasizing the fact that all senders of paper for collection know that it is the general practice of banks to mingle the proceeds with their other assets, hold that they must be taken to assent thereto, and hence to the relationship of debtor and creditor instead of trustee and *cestui que trust* as to such proceeds. Indeed the view contended for by the plaintiff would apparently make the banks guilty of a breach of trust in mingling the proceeds of collections with their other assets, in accordance with the convenient and usual mode of business. *Young* v. *Teutonia Bank & Trust Co.* 134 La. 879. *Union National Bank* v. *Citizens Bank,* 153 Ind. 44. *First National Bank of Richmond* v. *Davis,* 114 N. C. 343. *Sayles* v. *Cox,* 95 Tenn. 579. *Philadelphia National Bank* v. *Dowd,* 38 Fed. Rep. 172. *Merchants' & Farmers' Bank* v. *Austin,* 48 Fed. Rep. 25, 32. *First National Bank of Richmond* v. *Wilmington & Weldon Railroad,* 77 Fed. Rep. 401. See *Lippitt* v. *Thames Loan & Trust Co.* 88 Conn. 185. In the case at bar it is clear that the plaintiff, by making the draft collectible through the Cosmopolitan Trust Company authorized a collection by the method which was actually followed. The "proceeds" produced were merely a diminution of the debt or account owed by the trust company to B. Greenglass and Son, and a corresponding increase in the trust company's general substance, by means of book entries, and there was no actual reduction to possession of anything that

could be regarded as the subject matter of a trust. In other words by the reasonable construction of their acts the parties must be held to have contemplated the relationship of debtor and creditor after the collection. *Beecher* v. *Cosmopolitan Trust Co.* 239 Mass. 48. *Nineteenth Ward Bank* v. *First National Bank of South Weymouth, supra. Freeman's National Bank* v. *National Tube Works Co., supra. Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S. 50. *Baldwin's Bank of Penn Yan* v. *Smith,* 215 N. Y. 76. *First National Bank of Richmond* v. *Davis,* 114 N. C. 343. See 38 L. R. A. (N. S.) 146 n.

The plaintiff's claim that the proceeds of this collection were held by the defendant Allen in trust for the Bank of Buffalo, or its assignee is based on one of two theories, neither of which we can adopt. The first is that the deposit made by B. Greenglass and Son on September 24, 1920, was made for the purpose of paying the draft, and constituted a specific fund which passed into the hands of the bank commissioner when he took possession. But the fact is that only $134 of this deposit was in cash; the $3,777.28 in checks were credited subject to collection, and one of them (for $1,000) was never collected because payment was stopped. Even this deposit was not turned in in payment of the draft directly. What took place was the creation of a claim against the trust company, when the checks were paid: and a surrender of the claim of the depositor to the extent of the draft when he paid it. The other theory is that the transaction by which the draft was paid was in legal effect the same as if B. Greenglass and Son had drawn from their account through the paying teller the sum of $3,518, in money, and then handed it back to the collecting teller in payment of the draft. But that is not what the debtor did; and the difference is essential, not a mere matter of form. The payment made to the bank was not cash, to which the moment before it had not the slightest claim, and which therefore would count as wholly separate "proceeds" of the collection; it was merely the lessening of one of its own debts, and productive of nothing even remotely suggesting a "*res*" for a trust. The difference between the legal significance of the actual and the assumed courses of action cannot be ignored or confused. Finally the plaintiff is confronted with the further objection, that even if it had shown that the proceeds of the collection were impressed with

a trust in the hands of the Cosmopolitan Trust Company, it has failed to trace the alleged trust property into a specific fund in the hands of the bank commissioner, within the requirements of the Massachusetts rule. *Lowe* v. *Jones,* 192 Mass. 94. *Hewitt* v. *Hayes,* 205 Mass. 356, 362. The record shows that before the trust company was closed the alleged proceeds of this collection, including the check for $1,000 never collected, had passed beyond its control, and had been placed to its credit with the National Union Bank toward the maintenance of its special account already described.

The decree of the single justice dismissing the bill must be affirmed, with costs of the appeal.

*Ordered accordingly.*