TREASURER OF PUERTO RICO, Plaintiff and Appellee, *v.* BANCO COMERCIAL DE PUERTO RICO, Defendant and Appellee; R. FABIEN & CO., INC., Intervener and Appellant. SAME, Plaintiff and Appellee, *v.* SAME, Defendant and Appellee; ONTARIO SPECIALTIES, INC., Intervener and Appellant. SAME, Plaintiff and Appellee, *v.* SAME, Defendant and Appellee; JOSEPH HAHN & SON, INC., Intervener and Appellant. SAME, Plaintiff and Appellee, *v.* SAME, Defendant and Appellee; CARNATION Co., Intervener and Appellant.

Nos. 6530, 6531, 6537 and 6538. Argued April 22, 1936.— Decided July 31, 1936.

*Luis E. Dubón* for the interveners-appellants. *B. Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for the plaintiff-appellee. *José Ramírez Santibáñez* and *R. Ramírez Santibáñez* for the defendant-appellee.

Mr. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

These four appeals were taken in cases involving separate claims for preference of credits presented within the judicial administration of the Banco Comercial de Puerto Rico where a receiver was appointed at the request of the Treasurer of the Island. They will be considered in a single opinion.

After the Banco Comercial had been substituted by its liquidator, the Banco de Puerto Rico, the latter reached an agreement with the claimants R. Fabien & Co., Inc., Ontario Specialties, Inc., Joseph Hahn & Son., Inc., and Carnation Co., by which the claims were submitted for decision to the district court upon stipulation. The district court found upon such stipulations the following facts to have been proved:

"That the Banco Comercial de Puerto Rico received the bills from the interveners, collected the same and remitted the amount thereof to their owners in checks or drafts against its correspondent bank in New York, the Irving Trust Company;

"That the interveners received such checks and presented the same for collection, which payment the drawee bank refused to make, alleging that it had notice that the drawer bank had suspended payment and had been placed in receivership;

"That on the date the Banco Comercial de Puerto Rico closed, it had in cash in its vaults the sum of $43,466.83, which amount passed into the possession of the receiver appointed by this court, who received the same as a lump sum without receiving delivery of any separate, distinct and specific sum as funds arising from the collections of the interveners, but that on the contrary he received the amount as a sum arising from all of the banking operations of the institution carried on up to the date of its closing;

"That against the sum of $43,466.83, and by orders of this court and as preferred credits and as trust funds, there have been paid the total sum of $48,356.39, that is, a sum greater than that received by the receiver in cash upon the date of the closing of the Banco Comercial de Puerto Rico;

"That the interveners have not received from the Banco Comercial de Puerto Rico payment of the aforesaid bills of the checks remitted to them, and that the receiver refused to pay the same when they were presented to him;

"That the bank collected such bills, commingled the amount thereof with its other funds in cash, and remitted to the interveners in payment of the collections so made checks against its correspondent bank in New York, which the interveners received and presented for collection;

"That the sole instructions given by the interveners, drawers of the bills, to the Banco Comercial de Puerto Rico, were to collect the same and to remit immediately, or as is stated in English, the language used by the interveners and such bank: 'For collection and immediate remittance.' "

Upon such facts the district court held that the claims in question, although claimed to be trust funds arising out of collections, were limited as to preference to cash which passed into the possession of the receiver upon the closing of the bank, and that since such cash had been exhausted upon the date of the judgment, the claims should be considered as having been denied.

The claimants appealed and submitted their appeals in a single brief in which they assign three errors in their judgment committed by the court: in not holding that their credits constitute preferred claims; in deciding that the trust fund of $43,466.83 had been exhausted and dissipated by orders and decrees of the court itself, denying for such reason their preferred claims, and in not ordering the payment of their respective claims with preference or priority.

In discussing the first error the appellants maintain that the trial court itself recognized the preference of their claims in its opinion.

As we have already stated, the trial court did in effect recognize the trust character of the collections entrusted by the appellants to the bank, but decided that such character did not give them preference under the circumstances.

The liquidator in its brief attacks the first assignment of error, sustaining the same views which it upheld in the lower court and maintains that the credits belonging to the petitioners did not constitute true trust funds in the possession of the Banco Comercial when the receiver was appointed, since the facts are that the bank received the bills from the appellants, collected them and commingled the amount thereof with its other assets, remitting in payment to the drawers—the interveners appellants—drafts against its correspondent bank in New York, which were received without protest and presented for collection, which implies that such was the usual procedure followed by the bank in that kind of business.

The appellee cites a considerable number of cases upholding his position. We shall limit ourselves to making reference to the case of *Jennings* v. *U. S. F. & G. Co.*, 294 U.S. 216, in which Mr. Justice Cardozo delivered the unanimous opinion of the Supreme Court of the United States. He said inter alia:

"There was in force in Indiana in 1931 a statute known as the Bank Collection Code (Indiana Acts, 1929, c. 164), which is appli-

cable to national banks in so far as it is consistent with the policy or provisions, express or reasonably implied, of the National Bank Acts or of other federal acts of paramount authority. *Lewis* v. *Fidelity & Deposit Co. of Maryland,* 292 U. S. 559, 566; *First National Bank* v. *Missouri,* 263 U. S. 640, 656. Under that code (sec. 2), the relation between the forwarding bank and the collecting bank is that of principal and agent until the agent has completed the business of collection. Whether a fiduciary relation continues even afterwards, upon the theory that the proceeds of the collection until remitted to the forwarder are subject to a trust, depends upon the circumstances. In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own. *Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S. 50; *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *Planters' Bank* v. *Union Bank,* 16 Wall. 483; 501; *Hecker–Jones–Jewell Milling Co.* v. *Cosmopolitan Trust Co.,* 242 Mass. 181, 185, 186; 136 N. E. 333; *Freeman's National Bank* v. *National Tube Works Co.,* 151 Mass. 413, 418; 24 N. E. 779; *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553, 558; 20 N. E. 193; *First National Bank of Richmond* v. *Wilmington & W. R. Co.,* 77 Fed. 401, 402; *Philadelphia National Bank* v. *Dowd,* 38 Fed. 172, 183; *Merchants' Bank* v. *Austin,* 48 Fed. 25, 32.''

Nothing has been cited to us, nor have we been able to find in the Banking Law of Puerto Rico, or in the Corporation Law or in any other act anything which would prevent the application of this doctrine to the facts of these cases.

We are inclined to believe that under the circumstances at the time of the claims, the relations existing between the appellants and the bank in liquidation were those of creditor and debtor and not those of principal and agent, and that the trust nature of the collections had vanished.

██ However, even though this were not so, the judgments appealed from would in any event have to be sustained upon the ground on which the district judge relied in rendering them. The district judge cites from the sum-

mary of the case of *Shumacher* v. *Harriett,* 52 F. (2d) 817, 82 A.L.R. 1, the following:

"The amount for which a trust may be declared under the presumption that payments made by a trustee bank out of a common fund with which it has commingled trust funds were of the bank's own funds, and not trust funds, cannot exceed the smallest amount contained in the common fund subsequent to the commingling."

"It is not a sufficient tracing of trust funds into the hands of the receiver of an insolvent bank merely to prove that the fund went into the general estate and increased the amount and value thereof which came into the hands of the receiver."

He then says:

"This same principle has been uniformly respected by all the courts of the nation and it is a rule generally accepted by courts of justice that a claimant is obliged, under a sound theory of trusts, to trace specifically and certainly the amount of his claim within the particular determined funds transferred to a receiver or to a liquidating agent at the time of closing of a bank. It is undeniable as a matter of fact that the interveners cannot today trace the amounts of their claims in any particular and specific fund transferred to the receiver or to the liquidating agent at the closing of the Banco Comercial de Puerto Rico, particularly since according to the admitted facts the sole fund to which such tracing might be made is the fund of $43,466.83 taken over by the receiver in cash upon the date of the closing of the Banco Comercial. Such fund does not exist today, since there has been paid therefrom a greater sum under the orders of this court in cases of preferred claims to trust funds.

"This doctrine has been re-affirmed in the case of Horm'c Moore v. Portenfield, a decision rendered by the Supreme Court of South Dakota on November 8, 1929, 82 A.L.R. page 16; Reichart v. United Saving Bank, a decision of the Supreme Court of Michigan, rendered on December 8, 1931; and in the following cases: Dixon v. Hopkins, 56 F. (2d) 783, affirmed 58 F. (2d) 561. Principle sustained by the Supreme Court of the United States in 72 L. ed. 264; and 71 L. ed. 1060. In order not to unduly extend this order with citations, we call attention to the note appearing in 82 A.L.R., pages 46 to 288, where the legal points in question are dealt with at

length and the theories sustained by the majority of the courts of the nation are set forth, which agree with that laid down in the cases hereinbefore cited.

"In states such as Florida, where by statute sums arising from collections in banking institutions are declared to be preferred as trust funds, and in the case of Dixon v. Hopkins, above cited, 56 F. (2d) 783, the court expressly decided that such preference is limited to the sum in cash existent on the date of the closing of the bank, and that if such sum has been exhausted, the trust is unavailing, not because the trust has ceased to exist, but because of the impossibility of tracing the specific funds as to which the preference might have been established."

None of the arguments set forth by the appellants in their brief refute what the trial judge has said.

Having reached these conclusions, it is obvious that the district court ought not to have ordered the payment of the interveners' claims and consequently that the third and last of the errors assigned does not exist.

The appeals must be dismissed and the orders appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.