Francisco Fano, Acting Treasurer of Puerto Rico, Plaintiff, *v.* Banco Territorial y Agrícola de Puerto Rico, Defendant and Appellee; Acisclo Marxuach, Intervener and Appellant.

No. 7740. Argued June 7, 1939.—Decided June 12, 1940.

*Luis Tirado Géigel* for appellant. *J. Ramírez Santibáñez* and *R. Ramírez Santibáñez* for defendant-appellee.

Mr. Justice Hutchison delivered the opinion of the court.

From a stipulation filed in the district court we gather the following facts:

El Banco Territorial y Agrícola de Puerto Rico before closing its doors was the administrator of certain properties belonging to Margarita Oyanguren, who resided in Spain. It received the rentals and deposited them in a current account in the name of Mrs. Oyanguren under the heading "Administración Casas." On September

17, 1932, the bank sent Mrs. Oyanguren a draft on the Continental Bank and Trust Company of New York for $407.48, as a part of the funds belonging to her, deposited in the said account, and in the bank's possession, as income of the said administration. The bank suspended operations September 29, 1932, before Mrs. Oyanguren could present the draft for payment, and the same had not been paid. When a judicial administration of the bank was decreed, it ceased to administer Mrs. Oyanguren's property and in accordance with instructions received from her turned over the administration to Acisclo Marxuach.

Marxuach appeals from a dismissal of his petition for an order directing the immediate delivery of the $407.48 to Mrs. Oyanguren by a receiver, out of the funds in his possession —as deposits in trust belonging to her as a part of the income derived from the administration of her property.

The only assignment is that the district court erred "principally" in basing its judgment on the decision of this court in *Treasurer of Puerto Rico* v. *Banco Comercial*, 50 P.R.R. 539.

In the *Fabien* case this court quoted from *Jennings* v. *U.S.F. & G. Co.*, 294 U.S. 216, 219, 220, as follows:

"There was in force in Indiana in 1931 a statute known as the Bank Collection Code (Indiana Acts, 1929, c. 1641), which is applicable to national banks in so far as it is consistent with the policy or provisions, express or reasonably implied, of the National Bank Act or of other federal acts of paramount authority. *Lewis* v. *Fidelity & Deposit Co. of Maryland*, 292 U.S. 559, 566; *First National Bank* v. *Missouri*, 263 U.S. 640, 656. Under that code (sec. 2), the relation between the forwarding bank and the collecting bank is that of principal and agent until the agent has completed the business of collection. Whether a fiduciary relation continues even afterwards, upon the theory that the proceeds of the collection until remitted to the forwarder are subject to a trust, depends upon the circumstances. In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own. *Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U.S. 50; *Marine Bank* v. *Fulton*

*Bank*, 2 Wall. 252; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 501; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.*, 242 Mass. 181, 185, 186; 136 N. E. 333; *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass. 413, 418; 24 N. E. 779; *Manufacturers' National Bank* v. *Continental Bank*, 148 Mass. 553, 558; 20 N. E. 193; *First National Bank of Richmond* v. *Wilmington & W. R. Co.*, 77 Fed. 401, 402; *Philadelphia National Bank* v. *Dowd*, 38 Fed. 172, 183; *Merchants' Bank* v. *Austin*, 48 Fed. 25, 32.''

For reasons stated in the opinion delivered by Mr. Chief Justice Del Toro, we said we were inclined to think that in the circumstances of the *Fabien* case the relations between appellant and the liquidator of the failed bank on the dates of the different demands were those of creditors and debtor, not those of principals and agent, the fiduciary character of the claim having disappeared. But we went on to say, even otherwise, the judgments of the district court were sustained by the grounds upon which they had been based by that court. The district judge had quoted from the headnotes to *Shumacher* v. *Harriet*, 52 F. (2d) 817, 82 A.L.R. 1, the following paragraphs:

''The amount for which a trust may be declared under the presumption that payments made by a trustee bank out of a common fund with which it has commingled trust funds were of the bank's own funds, and not trust funds, cannot exceed the smallest amount contained in the common fund subsequent to the commingling.

''It is not a sufficient tracing of trust funds into the hands of the receiver of an insolvent bank merely to prove that the fund went into the general estate and increased the amount and value thereof which came into the hands of the receiver.''

The district judge had also said:

''This same principle has been uniformly respected by all the courts of the nation and it is a rule generally accepted by courts of justice that a claimant is obliged, under a sound theory of trusts, to trace specifically and certainly the amount of his claim within the particular determined funds transferred to a receiver or to a liquidating agent at the time of a closing of a bank. It is undeniable as

a matter of fact that the interveners cannot today trace the amounts of their claims in any particular and specific fund transferred to the receiver or to the liquidating agent at the closing of the Banco Comercial de Puerto Rico, particularly since according to the admitted facts the sole fund to which such tracing might be made is the fund of $43,466.83 taken over by the receiver in cash upon the date of the closing of the Banco Comercial. Such fund does not today exist, since there have been paid therefrom a greater sum under the orders of this court in cases of preferred claims to trust funds.

"This doctrine has been re-affirmed in the case of *Hormie Moore* v. *Portenfield,* a decision of the Supreme Court of South Dakota on November 8, 1929, 82 A.L.R. page 16; *Reichart* v. *United Savings Bank,* a decision of the Supreme Court of Michigan on December 8, 1931; and in the following cases; *Dixon* v. *Hopkins,* 56 Fed. (2d) 783, affirmed 58 Fed. (2d) 561. Principle sustained by the Supreme Court of the United States in 72 L. Ed. 264; and 71 L. Ed. 1060. In order not unduly to extend this order with citations, we call attention to the note appearing in 82 A.L.R. pages 46 and 288, where the legal points are dealt with at length and the theories sustained by the majority of the courts of the nation are set forth, which agree with that laid down in the cases hereinbefore cited.

"In states such as Florida, where by statute sums arising from collections in banking institutions are declared to be preferred as trust funds, and in the case of *Dixon* v. *Hopkins,* above cited, 56 Fed. (2) 783, the court expressly decided that such preference is limited to the sum in cash existent on the date of the closing of the bank, and that if such sum has been exhausted, the trust is unavailing, not because the trust has ceased to exist, but because of the impossibility of tracing the specific funds as to which the preference might have been established."

The brief for appellants in the *Fabien* case contained no satisfactory answer to the reasons so given by the district judge for the conclusion reached by him, and the judgment appealed from was affirmed.

In 7 Am. Jur. 566–570, sections 788–791, we read:

"Section 788. Generally—Majority Doctrine.—According to the great weight of authority, the mere facts that the trust relationship exists between the beneficial owner and the bank and that the trust money or other property came into the custody of the bank while it was a going concern, do not entitle the beneficial owner to a prefer-

ence or charge with respect to the assets of the bank in the hands of its receiver. It is incumbent on the cestui que trust, according to this view, to identify the trust property in the hands of the bank's receiver or to trace it in some manner into the receiver's hands. According to a number of courts following this majority doctrine, it must at least be shown that the assets of the bank in the hands of the receiver have been augmented or benefited by the trust fund. In this connection it is also to be observed that it is frequently stated, especially by courts following the majority view, that the burden of proof rests upon the plaintiff or claimant to trace his trust fund into the assets in the hands of the insolvent bank's receiver. Where there is an affirmative showing that the trust fund has been dissipated or lost by the trustee bank, so that no part thereof comes into the hands of the bank's receiver or is represented in the assets in his hands, the right to pursue the fund fails.

''Section 789. Minority Doctrine.—A relatively few cases follow the minority doctrine, which is usually expressed in some such form as that if trust funds are shown to have come into the hands of the bank, the bank will be presumed to have preserved and retained them in some form, and they will be presumed to have reached the hands of the bank's receiver, the burden resting on the latter to show that such funds did not come into his hands and did not contribute to the estate received by him. Even in such a jurisdiction, however, an affirmative showing that the trust fund did not, in fact, enter into or augment the assets in the hands of the receiver defeats the right of the cestui que trust to pursue the fund.

''Section 790. Tracing into General Assets or into Specific Assets—Majority Doctrine.—Where the cestui que trust cannot point out the identical trust property in the hands of the bank's receiver, he must, according to the weight of authority, in order to follow his trust property, show that the property or its proceeds went into some specific fund or into some specific identified piece of property which came into the hands of the bank's receiver, it not being sufficient merely to trace the trust property into the general estate of the bank. Under this view the mere fact that the general estate of the insolvent bank has been increased or benefited by the trust fund does not suffice.

''Section 791. Minority Doctrine.—There are a number of cases holding that where the trust fund has gone into the general estate of the insolvent bank, augmenting the assets coming into the hands of the bank's receiver, it is not necessary for the cestui que trust to

trace the fund into any specific fund or piece of property in the hands of the receiver. According to this view, it is sufficient merely to show that the assets of the bank coming into the hands of its receiver have been augmented by the trust fund. However, it must be shown under this doctrine that the bank, at the time it passed into the hands of the receiver, had sufficient funds or assets against which the trust could be impressed. The courts which follow this rule are merely liberalizing or extending the well-established doctrine that where trust funds are mingled with funds of the trustee, all disbursements by the trustee from the mixed fund are presumed to be of his own money, rather than of trust funds, and any balance remaining in the common store is subject to the trust.

"Of course, in those jurisdictions where the mere receipt by the bank of the trust fund or property, or a showing that it augmented the general assets of the bank, is sufficient to entitle the cestui que trust to a preference or charge with respect to the general assets of the bank, without any identification of the fund or property or any tracing thereof into the hands of the bank's receiver, it is not necessary for the claimant to designate any specific property or fund in the receiver's hands as containing or representing the trust fund or property."

It may be conceded, without holding, that the agreed facts established the existence of a trust fund to the amount of $407.48 in the bank's possession as a special deposit on September 17, 1932. Beyond this, there is nothing to show that the failed bank had any money whatever on hand when it closed its doors on September 29 or that the judicial administrator ever received anything whatever in cash as a part of the bank's assets. We cannot assume with appellant that the amount of the bank's cash assets did not fluctuate between September 17 and September 29, 1932, that is to say, during the twelve days immediately preceding suspension of the bank's operations. Appellant points out, however, that the district judge in his order did not say that at the time of such order the money which passed from the failed bank into the hands of the receiver had been exhausted. Hence, appellant insists that the doctrine of the *Fabien* case is inapplicable. If none of this money was available at the

time of the order, the district judge, says appellant, should have so stated. He was in a better position than anyone else to know whether or not this money still remained in the hands of the receiver. The order appealed from, says appellant, does not state that it was based on the want of proof "in this respect" or that it was based on the fact shown by the record in the district court—if that was the fact—that the money which passed into the hands of the receiver at the time of the bank's suspension of its operations had been exhausted prior to the date of such order.

The district judge in the instant case was the same district judge quoted at some length and with approval by this court in the *Fabien* case. What he said in the instant case was that even assuming that the money in question was a trust fund, yet—given the wording of the petition and of the stipulation—petitioner was not entitled to the preference claimed. Then in support of this conclusion he cited the *Fabien* case. What he meant was that petitioner had failed to show that any money had passed from the bank into the hands of the receiver, or, if so, that there was any money in the hands of the receiver out of which petitioner's claim could be paid. In the *Fabien* case we held that the burden of proof as to these matters was on petitioner. The brief for appellant has failed to convince us that the *Fabien* case should now be overruled.

Appellant assumes, apparently, that an inspection of the record by the district judge would have revealed, not only how much money came into the hands of the receiver on September 29, 1932, but also how much money was available for the payment of preferred claims on February 23, 1938, when the district court passed on petitioner's claim. There is nothing in the record before us to indicate that this would have been the result of such an inspection.

The instant case was submitted on an agreed statement of facts. It was not incumbent on the district judge to comb the record for facts not included in the stipulation. He might

have done this if any reference had been made in the petition, stipulation, or elsewhere to any page or part of the record where a fact, not included in the stipulation, was to be found. His failure to do this, in the absence of any such reference or suggestion was not reversible error.

The order appealed from will be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.