TESORERO DE PUERTO RICO, demandante y apelado, *v.* BANCO COMERCIAL DE PUERTO RICO, demandado y apelado; R. FABIEN & Co., INC., interventora y apelante. EL MISMO, demandante y apelado, *v.* EL MISMO, demandado y apelado; ONTARIO SPECIALTIES, INC., interventora y apelante. MANUEL V. DOMENECH, TESORERO DE PUERTO RICO, demandante y apelado, *v.* EL BANCO COMERCIAL DE PUERTO RICO, demandado y apelado; JOSEPH HAHN & SON, INC., interventora y apelante. EL MISMO, demandante y apelado, *v.* EL MISMO, demandado y apelado; CARNATION Co., interventora y apelante.

Núms. 6530, 6531, 6537 y 6538.—*Sometidos:* Abril 22, 1936. *Resueltos:* Julio 31, 1936.

*Luis E. Dubón,* abogado de las interventoras y apelantes; *Hon. Procurador General B. Fernández García* y *R. Cordovés Arana, Procurador General Auxiliar,* abogados del demandante apelado; *José Ramírez Santibáñez* y *R. Ramírez Santibáñez,* abogados del demandado apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Estos cuatro recursos se interpusieron en casos sobre reclamaciones separadas sobre preferencia de créditos presentadas dentro de la administración judicial del Banco Comercial de Puerto Rico decretada a instancia del Tesorero de la Isla. Serán estudiados en una sola opinión.

Sustituído el Banco Comercial por su liquidador el Banco de Puerto Rico, éste llegó a un acuerdo con los reclamantes

R. Fabien & Co., Inc., Ontario Specialties, Inc., Joseph Hahn & Son, Inc., y Carnation Co. por virtud del cual las reclamaciones se sometieron para su decisión a la corte de distrito mediante estipulaciones. Basándose en ellas la corte de distrito declaró probados los siguientes hechos:

"Que el Banco Comercial de Puerto Rico recibió los giros de los interventores, los cobró y remitió su importe a sus dueños en cheques o libranzas contra su Banco Corresponsal en Nueva York, o sea, el Irving Trust Co.;

"Que los interventores recibieron dichos cheques y los presentaron al cobro negándose el Banco contra el que iban expedidos a satisfacerlos alegando tener noticias de la suspensión de pago del Banco librador y de su declaración en Sindicatura;

"Que a la fecha del cierre del Banco Comercial de Puerto Rico éste tenía en efectivo en caja la suma de $43,466.83, cantidad que pasó a poder del Síndico nombrado por esta Corte habiéndola recibido éste así englobada y sin que se le hiciera entrega de cantidad separada, distinta y específica como fondos provenientes de las cobranzas de los interventores, sino que en contrario, la recibió como cantidad proveniente de todas las operaciones bancarias de la institución realizadas hasta la fecha de su cierre;

"Que contra la cantidad de $43,466.83 y por órdenes de esta corte y con carácter de créditos preferentes y como fondos en fideicomiso (*trust fund*), se han pagado en total $48,356.39 ó sea, cantidad mayor que la recibida por el Síndico en efectivo a la fecha del cierre del Banco Comercial de Puerto Rico;

"Que los interventores no han recibido del Banco Comercial de Puerto Rico el pago de los aludidos giros ni de los cheques remitídoles, y que el Síndico se negó a pagar los mismos cuando fueron presentados en él;

"Que el banco cobró dichos giros, mezcló el importe de los mismos con sus demás fondos en metálico y remitió a los interventores en pago de las cobranzas efectuadas cheques contra su Banco Corresponsal en Nueva York, que los interventores recibieron y presentaron al cobro;

"Que las únicas instrucciones dadas por los interventores libradores de los giros al Banco Comercial de Puerto Rico, fueron las de cobrarlos y remitir inmediatamente o como se expresa en el idioma inglés que era el usado entre los interventores y dicho Banco: 'For collection and immediate remittance.' "

Y basándose en ellos dicha corte resolvió que las reclamaciones de que se trata si bien tenían el carácter fideicomisario de cobranzas, su preferencia estaba limitada al efectivo que pasó a poder del Síndico al cierre del banco, y como ese efectivo se había agotado a la fecha de la sentencia, las reclamaciones debían ser como fueron declaradas sin lugar.

Apelaron las reclamantes y sometieron sus recursos por un solo alegato en el que señalan tres errores cometidos a su juicio por la corte al no resolver que sus créditos constituyen reclamaciones preferentes; al decidir que el fondo en fideicomiso de $43,466.83 se había agotado y disipado por órdenes y resoluciones de la misma corte, desestimando por ese motivo sus reclamaciones preferentes, y al no ordenar el pago de sus respectivas acreencias con preferencia o prioridad.

Discutiendo el primer error sostienen las apelantes que la propia corte sentenciadora en su opinión reconoció la preferencia de sus créditos.

La corte en efecto reconoce como ya indicamos el carácter fideicomisario de las cobranzas encomendadas por las apelantes al banco, pero decide que ese carácter no le daba preferencia bajo las circunstancias concurrentes.

En su alegato el liquidador apelado impugnando el primer señalamiento de error insiste en la posición que adoptara en la corte de distrito y sostiene que los créditos de los peticionarios no constituían verdaderos *trust funds* en poder del Banco Comercial cuando la sindicatura fué decretada ya que los hechos son que el banco recibió los giros de las apelantes, los cobró y mezcló su importe con su demás numerario, remitiendo en pago a los libradores—los interventores apelantes—giros contra su banco corresponsal en Nueva York que fueron recibidos sin protesta y presentados al cobro, lo que implica que ésa era la forma usual seguida por el banco en esa clase de negocios.

Cita el apelado un buen número de casos que sostienen lo que afirma. Nos limitaremos a referirnos al de *Jennings v. U. S. F. & G. Co.*, 294 U. S. 216, en el que emitió la opinión unánime de la Corte Suprema de los Estados Unidos el Juez Cardozo. En parte dijo:

"En 1931 existía en Indiana un estatuto conocido con el nombre de 'Bank Collection Code (Leyes de Indiana, 1929, Capítulo 164), aplicable a bancos nacionales en tanto en cuanto era consistente con los preceptos o disposiciones, expresos o razonablemente implícitos de la ley de bancos nacionales o de otras leyes federales de autoridad superior. Lewis v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 566; First National Bank v. Missouri, 263 U. S. 640, 656. Bajo dicho código (sección 2) la relación existente entre el banco transmisor y el banco cobrador era la de principal y agente hasta que este último hubiera terminado la transacción de cobro. Si continúa aún después de ello la relación fiduciaria en la teoría de que el producto del cobro hasta que se le remita al transmitente está sujeta a un fideicomiso, depende de las circunstancias. En ausencia de muestras de una intención contraria, la mejor doctrina es, doquiera prevalece la ley común, que la agencia del banco cobrador termina al cobrarse el documento, colocándose el banco desde ese momento en adelante en la posición de un deudor, con la libertad, disfrutada generalmente por los deudores, de usar el producto como suyo. Commercial Bank of Pennsylvania v. Armstrong, 148 U. S. 50; Marine Bank v. Fulton Bank, 2 Wall. 252; Planters' Bank v. Union Bank, 16 Wall. 483, 501; Hecker–Jones–Jewell Milling Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 185, 186; 136 N. E. 333; Freeman's National Bank v. National Tube Works Co., 151 Mass. 413, 418; 24 N. E. 779; Manufacturers' National Bank v. Continental Bank, 148 Mass. 553, 558; 20 N. E. 193; First National Bank of Richmond v. Wilmington & W. R. Co., 77 Fed. 401, 402; Philadelphia National Bank v. Dowd, 38 Fed. 172, 183; Merchants' Bank v. Austin, 48 Fed. 25, 32."

Nada se nos ha citado ni hemos podido encontrar nosotros en la Ley de Bancos de Puerto Rico, ni en la de corporaciones, ni en otra alguna que se oponga a la aplicación de esa jurisprudencia a los hechos de estos casos.

Nos inclinamos a creer que bajo las circunstancias concurrentes, a las fechas de las reclamaciones las relaciones

que existían entre las apelantes y el banco en liquidación eran las de acreedores y deudor y no las de principales y agente habiendo desaparecido la naturaleza fideicomisaria de las cobranzas.

██ ██ Pero aunque ello no fuera así, las sentencias recurridas siempre se sostendrían por el fundamento que tuvo el juez de distrito para dictarlas.

Cita dicho juez del resumen del caso de *Shumacher* v. *Harriett,* 52 Fed. (2d) 817, 82 A.L.R. 1, lo que sigue:

"La suma por que puede declararse un fideicomiso bajo la presunción de que los pagos hechos por un banco depositario de un fondo común con que ha mezclado fondos en fideicomiso eran de los propios fondos del banco, y no fondos en fideicomiso, no puede exceder de la cantidad mínima contenida en el fondo común existente con posterioridad al momento en que se mezcló el dinero."

"No constituye suficiente identificación de los fondos en fideicomiso que se encuentran en manos del síndico de un banco insolvente el probar meramente que el dinero fué al fondo común y aumentó el importe y valor del que vino a poder del síndico."

Y seguidamente dice:

"Este mismo principio ha sido uniformemente respetado por todos los tribunales de la nación y es regla de general aceptación por las cortes de justicia y obligación del reclamante dentro de la sana teoría del fideicomiso, identificar en forma específica y cierta el montante de su reclamación dentro de los fondos particulares y determinados traspasados al síndico o al Agente liquidador luego del cierre de un Banco. Es innegable como cuestión de hecho que los interventores hoy no pueden identificar el montante de su reclamación en fondo alguno específico y cierto traspasado al Síndico o al Agente liquidador luego del cierre del Banco Comercial de Puerto Rico toda vez que conforme a los hechos probados el único fondo en que tal identificación podría establecerse es en el de $43,466.83 recibido por el síndico en efectivo a la fecha del cierre del Banco Comercial y tal fondo hoy no existe por haberse satisfecho, con cargo al mismo, una suma mayor por órdenes de esta Corte en casos de reclamación de preferencia con carácter de 'trust fund' (fondos en fideicomiso).

"La teoría ha sido reafirmada en el caso de Hormic Moore vs. Portenfield, sentencia de la Corte Suprema de South Dakota de No-

·viembre 8, 1929, 82 A.L.R. página 16; Reichart vs. United Savings Bank, sentencia de la Corte Suprema de Michigan de 8 de diciembre de 1931; y en los siguientes casos:—Dixon vs. Hopkins, 56 Fed. (2d) 783, reafirmado en el 58 Fed. (2d) 561. Teoría sostenida por la Corte Suprema de los Estados Unidos en el 72 U. S. L. Ed. 264; y 71 U. S. L. Ed. 1060. Y a los efectos de no hacer muy extensa esta resolución con citas, llamamos la atención hacia lo contenido en el 82 A.L.R. páginas de la 46 a la 288 donde se tratan extensamente los puntos legales discutidos y se expresan las teorías sustentadas por la mayoría de los Tribunales de la nación que concuerdan con la expuesta en los· casos anteriormente citados.

"En estados como el de Florida, donde por ley se declaran pre-
·ferentes con carácter de fideicomiso las sumas provenientes de cobranzas en instituciones bancarias, y en el caso de Dixon vs. Hopkins ya citado, 56 Fed. 783, la Corte expresamente resolvió, que tal preferencia se limita a la suma en efectivo existente a la fecha del cierre del Banco, y si tal cantidad se ha agotado, el · trust resulta .ineficaz, no porque el fideicomiso deje de existir sino por imposibilidad de señalar los fondos específicos sobre los cuales podría determinarse la preferencia."

Nada de lo expuesto en su alegato por las apelantes destruye lo dicho por el juez sentenciador.

Habiendo llegado a las anteriores conclusiones, es obvio .que no debió la corte de distrito ordenar el pago de las re-clamaciones de los interventores demandantes y por tanto que .tampoco existe el tercero y último de los errores señalados.

·· *Deben declararse sin lugar los recursos y confirmarse las resoluciones apeladas.*

El Juez Asociado Señor Córdova Dávila no intervino.