FRANCISCO FANO, TESORERO INTERINO DE PUERTO RICO, demandante, *v.* BANCO TERRITORIAL Y AGRÍCOLA DE PUERTO RICO, demandado y apelado; y ACISCLO MARXUACH, interventor y apelante.

Núm. 7740.—*Sometido:* Junio 7, 1939. *Resuelto:* Junio 12, 1940.

*Luis Tirado Géigel,* abogado del apelante; *J. Ramírez Santibáñez* y *R. Ramírez Santibáñez,* abogados del demandado apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

De una estipulación radicada en la corte de distrito tomamos los siguientes hechos:

Con anterioridad a la fecha de su cierre, el Banco Territorial y Agrícola de Puerto Rico tenía bajo administración ciertas propiedades pertenecientes a Margarita Oyanguren, residente en España. Éste percibía las rentas y productos de esos bienes e ingresaba su importe en una cuenta corriente a nombre de dicha señora Oyanguren bajo el rubro "Administración Casas". En septiembre 17, 1932, el banco remitió a la señora Oyanguren un giro contra The Continental Bank and Trust Company of New York por la cantidad de $407.48, como parte de los fondos a ella pertenecientes, cuyo depósito figuraba consignado en la referida cuenta que estaba en poder del demandado como ingresos de la dicha administración. El banco suspendió sus operaciones el 29 de septiembre de 1932, antes de que la señora Oyanguren pudiera presentar al cobro dicho giro, y que el mismo no ha sido pagado. Que al decretarse la administración judicial del banco cesó éste en sus funciones de administrador de las propiedades de la señora Oyanguren, habiendo ella designado como nuevo administrador a Acisclo Marxuach, a quien el banco hizo entrega de tal administración, conforme a instrucciones recibidas de ella.

Marxuach apela de una resolución desestimando una petición suya en que solicitaba se ordenara al síndico la entrega inmediata de los $407.48 a la señora Oyanguren, de los fondos en su poder—procedentes de depósitos hechos con el banco y en calidad de fideicomiso y pertenecientes a ella como parte de los ingresos obtenidos por el banco en la administración de sus bienes.

El único señalamiento es que la corte de distrito erró "principalmente" al fundamentar su resolución en la deci-

sión recaída en el caso de *Tesorero de Puerto Rico* v. *Banco, etc. y R. Fabien & Co.*, 50 D.P.R. 562.

En el caso de Fabien este tribunal citó del de *Jennings* v. *U. S. F. & G. Co.*, 294 U. S. 216, 219, 220, así:

"En 1931 existía en Indiana un estatuto conocido con el nombre de 'Bank Collection Code' (Leyes de Indiana, 1929, Capítulo 164), aplicable a bancos nacionales en tanto en cuanto era consistente con los preceptos o disposiciones, expresos o razonablemente implícitos de la Ley de bancos nacionales o de otras leyes federales de autoridad superior. *Lewis* v. *Fidelity & Deposit Co. of Maryland*, 292 U. S. 559, 566; *First National Bank* v. *Missouri*, 263 U. S. 640, 656. Bajo dicho código (sección 2) la relación existente entre el banco transmisor y el banco cobrador era la de principal y agente hasta que este último hubiere terminado la transacción de cobro. Si continúa aun después de ello la relación fiduciaria en la teoría de que el producto del cobro hasta que se le remita al transmitente está sujeta a un fideicomiso, depende de las circunstancias. En ausencia de muestras de una intención contraria, la mejor doctrina es, doquiera prevalece la ley común, que la agencia del banco cobrador termina al cobrarse el documento, colocándose el banco desde ese momento en adelante en la posición de un deudor, con la libertad, disfrutada generalmente por los deudores, de usar el producto como suyo. *Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U. S. 50; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 501; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.*, 242 Mass. 181, 185, 186; 136 N. E. 333; *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass. 413, 418; 24 N. E. 779; *Manufacturers' National Bank* v. *Continental Bank*, 148 Mass. 553, 558; 20 N. E. 193; *First National Bank of Richmond* v. *Wilmington & W. R. Co.*, 77 F. 401, 402; *Philadelphia National Bank* v. *Dowd*, 38 F. 172, 183; *Merchants' Bank* v. *Austin*, 48 F. 25, 32."

Por razones que se hacen constar en la opinión emitida por el Juez Presidente Sr. Del Toro dijimos que nos inclinábamos a creer que bajo las circunstancias concurrentes en el caso de Fabien las relaciones que existían entre las apelantes y el banco en liquidación eran las de acreedores y deudor y no las de principales y agente, habiendo desaparecido la naturaleza fideicomisaria de las cobranzas. Pero continuamos diciendo que aunque ello no fuera así, las sen-

tencias recurridas siempre se sostendrían por el fundamento que tuvo el juez de distrito para dictarlas. Citó dicho juez del resumen del caso de *Shumacher* v. *Harriett,* 52 F. (2d) 817, 82 A. L. R. 1, lo que sigue:

"La suma por que puede declararse un fideicomiso bajo la presunción de que los pagos hechos por un banco depositario de un fondo común con que ha mezclado fondos en fideicomiso eran de los propios fondos del banco, y no fondos en fideicomiso, no puede exceder de la cantidad mínima contenida en el fondo común existente con posterioridad al momento en que se mezcló el dinero.

"No constituye suficiente identificación de los fondos en fideicomiso que se encuentran en manos del síndico de un banco insolvente el probar meramente que el dinero fué al fondo común y aumentó el importe y valor del que vino a poder del síndico."

El juez de la corte inferior también dijo:

"Este mismo principio ha sido uniformemente respetado por todos los tribunales de la nación y es regla de general aceptación por las cortes de justicia y obligación del reclamante dentro de la sana teoría del fideicomiso, identificar en forma específica y cierta el montante de su reclamación dentro de los fondos particulares y determinados traspasados al síndico o al agente liquidador luego del cierre de un banco. Es innegable como cuestión de hecho que los interventores hoy no pueden identificar el montante de su reclamación en fondo alguno específico y cierto traspasado al síndico o al agente liquidador luego del cierre del Banco Comercial de Puerto Rico toda vez que conforme a los hechos probados el único fondo en que tal identificación podría establecerse es en el de $43,466.83 recibido por el síndico en efectivo a la fecha del cierre del Banco Comercial y tal fondo hoy no existe por haberse satisfecho, con cargo al mismo, una suma mayor por órdenes de esta corte en casos de reclamación de preferencia con carácter de 'trust fund' (fondos en fideicomiso).

"La teoría ha sido reafirmada en el caso de *Hornic, More & Portenfield* v. *Farmers' & M. Bank,* sentencia de la Corte Suprema de South Dakota de noviembre 8, 1929, 82 A.L.R., página 16; *Reichert* v. *United Savings Bank,* sentencia de la Corte Suprema de Michigan de 8 de diciembre de 1931 (255 Mich. 685); y en los siguientes casos: *Dixon* v. *Hopkins,* 56 F. (2d) 783, reafirmado en (*City of Miami* v. *First Nat. Bank, etc.*) 58 F. (2d) 561. Teoría sostenida por la Corte

Suprema de los Estados Unidos en el 72 U.S.L. Ed, 264; y 71 U.S.L. Ed. 1060. Y a los efectos de no hacer muy extensa esta resolución con citas, llamamos la atención hacia lo contenido en el 82 A.L.R. páginas de la 46 a la 288 donde se tratan extensamente los puntos legales discutidos y se expresan las teorías sustentadas por la mayoría de los tribunales de la nación que concuerdan con la expuesta en los casos anteriormente citados.

"En estados como el de Florida, donde por ley se declaran preferentes con carácter de fideicomiso las sumas provenientes de cobranzas en instituciones bancarias, y en el caso de *Dixon* v. *Hopkins* ya citado, 56 F. (2d) 783, la corte expresamente resolvió, que tal preferencia se limita a la suma en efectivo existente a la fecha del cierre del banco, y si tal cantidad se ha agotado, el *trust* resulta ineficaz, no porque el fideicomiso deje de existir, sino por imposibilidad de señalar los fondos específicos sobre los cuales podría determinarse la preferencia."

El alegato de los apelantes en el caso de Fabien no contenía una respuesta satisfactoria a las razones dadas por el juez de distrito para llegar a la conclusión a que llegó, y la sentencia apelada fué confirmada.

En 7 Am. Jur. 566–570, secciones 788–791, hallamos lo siguiente:

"Sección 788. Doctrina de la mayoría, en términos generales.— De acuerdo con la gran mayoría de las autoridades el mero hecho de que exista una relación de fideicomiso entre el dueño y el banco y de que el dinero u otros bienes en fideicomiso vinieran a la custodia del banco mientras éste hacía negocios como tal, no da derecho al dueño del fideicomiso a una preferencia o prelación con respecto al activo del banco en poder de su síndico. Incumbe al beneficiario, según este criterio, identificar los bienes del fideicomiso que se hallan en poder del síndico del banco o identificarlos en alguna forma en manos de éste. Según un número de cortes que siguen la doctrina de la mayoría, debe demostrarse por lo menos que el activo del banco que se encuentra en poder del síndico ha sido aumentado o benefi-· ciado por el fondo en fideicomiso. A este respecto debe también observarse que con frecuencia se dice, especialmente por cortes que sustentan el criterio de la mayoría, que incumbe al demandante o reclamante identificar los bienes en fideicomiso en el activo que está en poder del síndico del banco insolvente. Cuando se demuestra afirmativamente que el fondo en fideicomiso se ha disipado o perdido

por el banco fiduciario, en tal forma que ninguna parte del fondo va a poder del síndico del banco o no está representado en el activo que está en sus manos, el derecho a perseguirlo deja de existir.

"Sección 789. Doctrina de la minoría.—Relativamente pocos casos siguen la doctrina de la minoría, que de ordinario se expresa en el sentido de que si se demuestra que fondos en fideicomiso están en poder del banco, se presume que éste los ha conservado y retenido en alguna forma y que los mismos han llegado a manos del síndico del banco, incumbiendo a este último demostrar que tales fondos no llegaron a su poder ni forman parte del activo que ha recibido. Aun en tales jurisdicciones, sin embargo, cuando se demuestra afirmativamente que tales bienes en fideicomiso no forman parte ni aumentan el activo en poder del síndico, el derecho del beneficiario o fideicomisario a perseguir los fondos desaparece.

"Sección 790. Identificación de los bienes del fideicomiso en el activo general.—Doctrina de la mayoría.—Cuando el beneficiario no puede identificar los bienes del fideicomiso en poder del síndico del banco, él debe, para poder perseguir sus bienes en fideicomiso, según la mayoría de las autoridades, demostrar que los bienes o su producto fueron a algún fondo específico o se invirtieron en alguna propiedad determinada que está en poder del síndico del banco, no siendo suficiente meramente decir que los bienes del fideicomiso forman parte del activo general del banco. Según este criterio el mero hecho de que el activo general del banco insolvente se haya aumentado o beneficiado por el fondo en fideicomiso no es suficiente.

"Sección 791. Doctrina de la minoría.—Existe un número de casos que resuelven que cuando los fondos del fideicomiso han entrado a formar parte del activo general del banco insolvente, aumentando dicho activo en poder del síndico, no es menester que el beneficiario identifique los bienes en algún fondo específico o en determinada propiedad en poder del síndico. Según este criterio, basta demostrar meramente que el activo del banco en poder del síndico ha sido aumentado por el fideicomiso. Sin embargo, según esta doctrina, debe probarse que el banco, al momento de pasar a poder del síndico, tenía suficientes fondos o activo para pagar el fideicomiso. Las cortes que siguen esta regla meramente liberalizan o amplían la bien conocida doctrina de que cuando se mezclan fondos en fideicomiso con fondos del fiduciario, todo desembolso hecho por este último de los fondos mixtos se presume haberse hecho de dinero propio, más bien que de fondos en fideicomiso, y que cualquier remanente que haya en el caudal común está sujeto al pago del fideicomiso.

"Desde luego, en aquellas jurisdicciones en que el mero hecho de recibir el banco bienes en fideicomiso, o de demostrar que el activo general del banco fué aumentado, es suficiente para que el beneficiario tenga una preferencia o prelación con respecto al activo general del banco—sin que sea necesario identificar los fondos o bienes en poder del síndico del banco—no es menester que el reclamante demuestre que determinados bienes o fondos específicos que están en poder del síndico contienen o representan su fideicomiso.''

Podría admitirse, sin resolverse, que los hechos estipulados establecieron la existencia de un fideicomiso por la suma de $407.48 en poder del banco como depósito especial en septiembre 17, 1932. Fuera de esto nada hay que demuestre que el banco quebrado tuviera algunos fondos en su poder al cerrar sus puertas el 29 de septiembre o que el administrador judicial jamás recibiera cantidad alguna en efectivo como parte del activo del banco. No podemos asumir con el apelante que el activo del banco en efectivo no fluctuara entre el 17 y 29 de septiembre de 1932, es decir, durante los doce días que inmediatamente precedieron la suspensión de las operaciones del banco. El apelante indica, sin embargo, que el juez de distrito en su resolución no hace constar que al tiempo de dictar la misma el efectivo en poder del síndico al momento de cerrarse el banco estaba agotado. En su consecuencia, el apelante insiste en que la doctrina del caso de Fabien es inaplicable. Si este dinero no podía obtenerse al tiempo de dictar su resolución, alega el apelante, el juez de distrito debió declararlo así en su resolución. Nadie estaba en mejor posición que él para saber si este dinero aún estaba en manos del síndico. En la resolución apelada, dice el apelante, no se hace constar que ella se basó en falta de prueba ''al respecto'', ni que se fundó en el hecho que aparecía de los autos de la corte de distrito—de ser tal hecho—de que el dinero que pasó a poder del síndico al tiempo que el banco suspendió sus operaciones se hubiera agotado antes de dictarse la aludida resolución.

El juez de distrito en el caso de autos fué el mismo juez de distrito que citamos extensamente con aprobación en el

caso de Fabien. Lo que él dijo en el presente caso fué que aun asumiendo que la cantidad reclamada por el peticionario pudiese considerarse como un *trust fund,* aun así, dados los términos en que están redactadas la petición y estipulación de hechos, no tiene derecho el peticionario a la preferencia que solicita. Entonces, en apoyo de esta conclusión, citó el caso de Fabien. Lo que quiso decir fué que el peticionario había dejado de demostrar que algún dinero había pasado del banco a manos del síndico o de ser así, que había algún dinero en poder del síndico del cual podía pagarse la reclamación del peticionario. En el caso de Fabien resolvimos que el peso de la prueba de esas cuestiones recaía sobre los hombros del peticionario. El alegato del apelante no nos ha convencido de que el caso de Fabien debe ahora ser revocado.

▬ El apelante asume, aparentemente, que si el juez de distrito hubiera examinado los autos, éstos le hubieran demostrado no sólo cuánto dinero fué a poder del síndico en septiembre 29, 1932, sino también cuánto dinero había disponible para pagar las reclamaciones preferentes en febrero 23, 1938, fecha en que el juez de distrito resolvió la reclamación del peticionario. Nada hay en los autos que tenemos ante nos que indique que éste hubiera sido el resultado de tal inspección.

El presente caso fué sometido mediante una estipulación de hechos. No incumbía al juez de distrito examinar los autos con un microscopio en busca de hechos no incluídos en la estipulación. Él quizá pudo hacer esto de haberse hecho referencia en la petición, estipulación o en algún otro sitio a la página o parte de los autos en que podía hallarse algún hecho no incluído en la estipulación. El no haberlo hecho así, en ausencia de tal referencia o indicación, no es error que da lugar a la revocación.

*Debe confirmarse la resolución apelada.*

El Juez Asociado Sr. De Jesús no intervino.